## CITY OF BUFFALO v. PRESTON.

(Supreme Court, Appellate Division, Fourth Department. March 10, 1903.)

1. DISORDERLY CONDUCT—CIVIL ACTION FOR FINE—JURISDICTION OF MUNICIPAL COURT.

> An ordinance enacted pursuant to section 17 of the charter of Buffalo (Laws 1891, c. 105), provided that persons convicted of disorderly conduct as therein defined should be fined, and that, in case such person should not immediately pay such fine, he or she might be committed to the county penitentiary. Sections 20, 23, 24, of the charter provide for the recovery of a fine imposed by ordinance, by a civil action in the municipal court, and prescribe the procedure; and section 25 provides for the enforcement of an unpaid fine by execution against the body of defendant and confinement in the penitentiary. Section 21 provides that a person convicted of disorderly conduct under an ordinance "shall be fined or committed to the county penitentiary"; and section 26 provides that, when an ordinance provides for imprisonment on conviction, the proceedings shall be in the manner provided by law for criminal prosecutions. *Held*, the ordinance defining and punishing disorderly conduct is enacted under sections 21 and 26 of the charter, which provide for criminal proceedings, and do not authorize a civil action to recover a fine in the municipal court.

> Spring, J., dissenting.

Appeal from Special Term, Erie county.

Action by the city of Buffalo against Josephine Preston. From a judgment of the Supreme Court affirming a judgment of the municipal court of the city of Buffalo for plaintiff, defendant appeals. Reversed.

Argued before ADAMS, P. J., and SPRING, WILLIAMS, HISCOCK, and NASH, JJ.

William S. Jackson, for appellant.

William H. Gorman, for respondent.

HISCOCK, J. This action was brought to recover of defendant a fine because of her alleged violation of certain ordinances of the city of Buffalo which prohibited the keeping of houses of ill fame as being disorderly conduct. There seems to have been no doubt upon the trial in municipal court but that the evidence warranted the conclusion that defendant had been guilty of the conduct charged. At any rate, no question of that character is presented or raised upon this appeal. The proposition, however, is strongly urged that the ordinances upon which, if at all, this action must rest, did not in fact authorize a civil action in municipal court to recover a fine, but that such ordinances rather pointed the way to criminal proceedings. In addition to this, and to other propositions advanced against the propriety of the practice followed in this case in directing a verdict and in fixing the amount of the fine for which the verdict was rendered, it is also claimed that it was unconstitutional for the municipal authorities by way of additional punishment to adopt ordinances which should provide a course of proceeding by a civil action for a fine against the keeping of a house of ill fame under the designation of "disorderly conduct," when the general statutes of the state already provided for criminal proceedings against the same acts which constituted such disorderly conduct; that under said ordi-

nances defendant was deprived of trial before a constitutional jury of 12 men.

We shall take up the consideration of the question first presented, because, in our judgment, the appellant's contention in respect thereto is correct. We do not think that the ordinances relied upon by plaintiff did authorize this civil action to recover a fine in municipal court, and that, therefore, the court was without jurisdiction, and the judgment must fall. The consideration and discussion of such question requires a statement somewhat at length of various provisions in the charter of the city of Buffalo, which conferred the power upon the municipal government to adopt and enforce ordinances, and also of the ordinances themselves which are involved here.

Subdivision 3 of section 17 of the charter of the city of Buffalo (chapter 105, Laws 1891, and amendments) provides that "the common council shall from time to time enact ordinances * * * to define and prevent disorderly conduct."

Sections 20, 23, 24, and 25 of said charter further provide as follows:

"Sec. 20. A fine for violating any ordinance enacted under the authority conferred by this act may be prescribed in the ordinance, not exceeding two hundred and fifty dollars. The ordinance may prescribe that the fine for its violation shall not be less nor more than a certain sum; in which case, the amount of penalty shall, within said bounds, be fixed by the court or officer before whom the matter shall be tried. A civil action may be maintained to recover a fine imposed by any ordinance enacted under the authority conferred by this act."

"Sec. 23. Actions to recover fines incurred under this title or the ordinances enacted pursuant to it, shall be brought in the name of the city. In the complaint in such action it shall be sufficient to allege, generally, that the defendant has violated the provisions of said title or ordinance, stating the provisions thereof of which a breach is claimed, and the amount for which judgment is demanded. * * *

"Sec. 24. If the action be brought in the municipal court of Buffalo the first process may be a warrant or summons. * * *

"Sec. 25. Execution upon judgment for fine may issue immediately, and shall command the officer to whom it shall be directed and delivered, if the judgment and his fees shall not be immediately paid, to take the body of the defendant, and deliver him or her, with a copy of the execution, to the keeper of the Erie county penitentiary; and said keeper shall confine such defendant in said penitentiary for the term of one day for each and every dollar unpaid upon said judgment, not exceeding six months. * * *"

The foregoing sections clearly provide for the imposition of a fine for the violation of an ordinance authorized by the act, recoverable by civil action, and point out the course of procedure therein. As we understand it, no question is made that the municipal court of the city of Buffalo would have jurisdiction of an action brought to recover a legal fine where a civil action was authorized.

We pass next to the quotation of sections 21 and 26 of said charter, which provide as follows:

"Sec. 21. An ordinance passed under subdivision three of section seventeen of this act [already referred to as authorizing the adoption of ordinances to define and prevent disorderly conduct] may provide that any person, upon conviction of a violation thereof, shall be fined or committed to the Erie county penitentiary for such time as the court or officer before whom

such person was convicted shall fix, not exceeding six months, in case the person convicted of such violation is fined and does not immediately pay such fine, he may be committed to the Erie county penitentiary for the term of one day for each and every dollar of said fine not paid. * * *"

"Sec. 26. When an ordinance provides that a person convicted of breach of it may be sentenced to confinement in the penitentiary, the person charged with a violation of such ordinance shall be proceeded against in the way provided by law for proceedings against persons charged with the commission of a criminal offense."

We think that the foregoing two sections authorize and relate to criminal proceedings. The last one manifestly does. We think that the first one also does; that it is not connected with the other sections first quoted in providing for a civil action merely to collect a fine. When this section gives the court or officer before whom the alleged violator is brought the power upon conviction either to fine or commit to the penitentiary, its character as between civil and criminal proceedings must be determined by all the powers therein conferred. · The power, at the option of the court or officer to commit to the penitentiary, implies, as we think, a judgment and sentence to that effect, and indicates necessarily a proceeding of a criminal nature. The nature of the proceeding is not changed or diminished in this respect because the optional power is given to confine, rather than sentence and commit to the penitentiary. Concededly, the municipal court of Buffalo had no power to entertain criminal proceedings. This is distinctly admitted by the learned counsel for the respondent in his brief, and there can be no doubt about the correctness of his admission.

We next proceed to the ordinances which were adopted by the city of Buffalo under the sections of the charter already quoted, and under the alleged authority of which this action was brought for the purpose of determining whether said ordinances were in fact framed and adopted under the charter provisions authorizing civil proceedings to collect a fine, and therefore authorized this civil action in municipal court. As already indicated, we do not think that they were so framed. In chapter 9 of the ordinances of said city we find the provisions under review as follows:

"Disorderly Conduct. Section 1. Disorderly conduct is defined to be the doing or commission of any of the acts prohibited in this chapter, and any person who shall do or commit any of said acts shall be guilty of disorderly conduct.

"Sec. 2. No person shall keep a house of ill fame, house of prostitution, or assignation house within the city, or shall in any manner contribute to the support of such houses, or shall voluntarily reside therein."

"Sec. 30. Every person who shall be convicted of a violation of any of the provisions of this chapter shall be fined not less than two dollars nor more than one hundred dollars, and in case the person convicted of such violation shall not immediately pay such fine he or she may be committed to the Erie county penitentiary for the term of one day for each and every dollar of said fine not paid. * * *"

The last section is, of course, the decisive one in this inquiry. We think that an examination of its language at once suggests that it was framed under and in accordance with the provisions of section 21 of the charter, hereinbefore already quoted, and which, as we have indicated, in our judgment provides for criminal proceedings, or at least

does not relate to and provide for merely civil actions to collect fines. The language of said ordinance, in accordance with the authority conferred by said provision of the charter, seems, under a fair construction, to plainly provide that any person convicted of a violation of the ordinances against disorderly conduct may be fined a certain amount, and, if said fine is not paid, committed to the penitentiary. We think it must be fairly inferred that this fine and contingent commitment to the penitentiary are to be provided for in a judgment and sentence of the court. The authority to take hold of the convicted person and lock him up in the penitentiary if he does not pay his fine, must be found somewhere, and that abiding place would naturally and necessarily be in the sentence and judgment of the court which convicted him. To secure the remedy outlined by the ordinance in the case of a conviction for the offenses described, the court would, in effect, provide that the guilty person should pay a fine and stand committed until said fine was paid. This, beyond any question, would be a determination in a criminal proceeding. It would be in analogy with sections 484 and 487 of the Code of Criminal Procedure:

"Sec. 484. * * * A judgment that the defendant pay a fine may also direct that he be imprisoned until the fine be satisfied, specifying the extent . of the imprisonment, which cannot exceed one day for every dollar of the fine."

"Sec. 487. If the judgment be imprisonment, or a fine and imprisonment until it be paid, the defendant must forthwith be committed to the custody of the proper officer, and by him detained, until the judgment be complied with."

· We think that the provision in said ordinance that the convicted person, in default of payment of his fine, shall be committed to the penitentiary, clearly implies the power upon the part of the convicting court to include in its sentence and judgment the provision for such result, and that the judgment so providing would be one in a criminal proceeding.

Turning in the other direction, it seems to us that it would require a construction strained and savoring somewhat of force to hold that said ordinance was an enactment under and upon the line of the provisions of the charter quoted relating to civil actions for fines, and especially that the brief provision that the convicted person, upon not paying his fine, might be committed to the penitentiary, was intended to be a provision under section 25 of the charter for the details of a civil execution upon a judgment for a fine which should command the officer to take the body of the defendant if he did not pay the fine and costs. Again, a mere inspection of the provisions of the ordinance in question and of the provisions of the charter for civil proceedings indicates to our mind an entire lack of relationship between them. If section 30 (ordinances) was intended to provide for civil proceedings to collect a fine under the sections of the charter governing that subject, it was absolutely unnecessary for it to do more than provide the amount of the fine to be imposed in case of a violation of the ordinance. That being done, the charter provisions then took hold of the subject, and amply provided for a civil action to be maintained to recover the fine, and for the proceedings in that action, in-

cluding the judgment and body execution in default of payment of the fine.

Upon the other hand, section 21 of the charter, relating, in our opinion, as we have suggested, to criminal proceedings, expressly enacts that an ordinance adopted under section 17 of the charter, relating to disorderly conduct, may contain just such provisions with reference to fines and commitment to the penitentiary as section 30 of the ordinances does contain. Thus, some of the provisions of said ordinance, which are superfluous and unnecessary if it relates to fines to be collected by civil actions, are expressly suggested, and natural, if held to relate to proceedings under the criminal sections of the charter. It is, perhaps, of some significance that the ordinance, section 30, prior to 1899, read as follows:

"Every person who shall be convicted of the doing or commission of any of the acts prohibited in the foregoing provisions of this chapter shall forfeit a penalty of not less than five dollars nor more than one hundred dollars unless a different penalty is specifically prescribed."

During said year it was amended by adding the words now found therein with reference to the commitment to the penitentiary in case of nonpayment of the fine, and which, as has already been fully suggested, seem to us to be so thoroughly in harmony with the provisions of section 21 of the charter, and so out of relation with the other provisions of the charter relating to civil actions for fines. The act of keeping a house of ill fame, for which the plaintiff is seeking to administer a punishment through a fine and civil action, is one of which the general criminal law of the state beyond any question takes cognizance. We think there is force in the suggestion that the court should not, in the absence of a clear expression of such intent, infer a purpose to provide for special proceedings by ordinance outside of those already supplied by the general statute law of the state, and which proceedings, in effect, subject a defendant to a somewhat summary punishment. In saying this we do not intend to indicate in any manner our opinion that the lawmaking body of the municipality may not, under legislative authority, by proper ordinances provide for the punishment of offenses against the municipal welfare in such manner by fines to be recovered in civil actions. There is no reason, however, why the intent to do so should not be clearly expressed.

The construction which we have placed upon the language and character of the particular ordinances under review necessarily leads to a reversal of the judgment appealed from, however ample may be the power of the common council to adopt in proper form an ordinance which would authorize such a proceeding as plaintiff has attempted to invoke in this case. The judgment of the Supreme Court and municipal court therefore should be reversed, with costs.

Judgment of the Supreme Court and of the municipal court reversed, with costs, upon questions of law only, the facts having been examined, and no error found therein. All concur, except SPRING, J., who dissents in opinion.

SPRING, J. (dissenting). The municipal court of the city of Buffalo was created by the charter of the city, and its jurisdiction,

which is exclusively confined to civil actions or proceedings, is defined in the charter originating it (title 22 of the Revised City Charter; chapter 105, Laws 1891, and acts amendatory thereof). It is specifically vested with authority to maintain actions for penalties (section 456, subds. 5, 13); in the latter of which occurs the following:

"The court shall also have jurisdiction in an action commenced for the recovery of a fine or penalty for the violation of an ordinance of the city, and in an action or proceeding instituted for the punishment of any person for the offense of violating any such ordinance."

Section 17 of title 2, c. 1, pertaining to the legislative department, which is the common council of the city, directs that body to enact ordinances for certain purposes enumerated, and, among others, "to define and prevent disorderly conduct; to prevent all disorderly assemblages, all disturbing noise, all drunkenness in public places; and to punish vagrants, beggars and disorderly persons as defined by law." Section 20 of the act, and which is in the same chapter, vests the power in the common council to fix the penalty or fine for a violation of any ordinance which it may enact, limiting the maximum sum to $250. The section further provides: "A civil action may be maintained to recover a fine imposed by any ordinance enacted under the authority conferred by this act." If the penalty is a varying sum, it is to "be fixed by the court or officer before whom the matter shall be tried." By section 23 it is provided that "actions to recover fines incurred under this title or the ordinances enacted pursuant to it, shall be brought in the name of the city," and, if in the municipal court, "the first process may be a warrant or summons." The form of the complaint (section 23), and when the summons may be returnable and served (section 24), are also prescribed. Section 25 provides for the immediate issuance of an execution upon a judgment for a fine, and, if not collected, for the deliverance of the defendant to the Erie county penitentiary, and his confinement therein "for the term of one day for each and every dollar unpaid upon said judgment, not exceeding six months."

To sift and group these various sections, we find that the authority of the municipal court to entertain actions to recover any fine or penalty prescribed by the common council is given by the Legislature. The common council is required to enact certain ordinances, but it possesses no power to enlarge or lessen or interfere with the jurisdiction of the municipal court over actions for penalties. The duties and functions of that court have already been taken care of by the charter itself. The court, for the purpose of enforcing its judgments for fines and penalties, is not restricted to an execution against the property, but the execution commands the officer to imprison the judgment debtor in the county penitentiary, unless payment is made at once; that is, a body execution is permitted to enforce the judgment. All these steps, it is to be remembered, are fixed by the Legislature to make effective the civil and only jurisdiction of the court in collecting the fines or penalties prescribed by the common council in its ordinances.

Pursuant to the authority delegated to it by the Legislature, the

common council enacted ordinances defining in chapter 9 what constituted disorderly conduct, and covering the offense upon which this action is founded (section 2). In several of the sections a specific sum was provided for the violation of the particular ordinance, while in others no sum is established. Section 30 of this chapter, as amended in 1899, reads as follows:

"Every person who shall be convicted of a violation of any of the provisions of this chapter shall be fined not less than two dollars nor more than one hundred dollars, and in case the person convicted of such violation shall not immediately pay such fine he or she may be committed to the Erie county penitentiary for the term of one day for each and every dollar of said fine not paid. All provisions of this chapter imposing or prescribing the penalty or punishment for any violation thereof inconsistent with the provisions of this section as amended are hereby repealed."

The common council did not presume to declare that these fines were recoverable in a civil action in the municipal court. An enactment of that kind would not have been within its province, for the reason, already noted, that the Legislature had set the boundaries for the jurisdiction of that court. The duty of the common council was first to define the offense, and then to place the penalty, either absolutely or within certain limits. Its enforcement as a civil remedy the council had nothing whatever to do with, and evidently appreciated the limitations upon its authority, and did not overstep them. The common council, however, was authorized, in effect, to make the offense of disorderly conduct a misdemeanor, and to prescribe the punishment to be meted out upon conviction for its violation (section 21, Revised Charter), and it might be by fine, with consequent imprisonment in the county penitentiary. Section 26, which evidently has reference to the criminal proceedings, is as follows:

"When an ordinance provides that a person convicted of breach of it may be sentenced to confinement in the penitentiary, the person charged with a violation of such ordinance shall be proceeded against in the way provided by law for proceeding against persons charged with the commission of a criminal offense."

In ordinances enacted for the repression of disorderly conduct, in addition to the imposition of a fine, the common council, at its option, by section 21, might make the offense a misdemeanor. The execise of this power, however, was not intended to destroy the penalty or fine to be enforced as a civil remedy, but as a further safeguard for the curtailment of this particular class of offenses. We have, therefore, two distinct remedies permissible against one who is charged with a violation of the ordinances defining disorderly conduct—one a civil action in the municipal court to recover the fine or penalty, and, to enforce the judgment, a body execution may issue upon failure to pay forthwith; the other an arrest, and, upon conviction in a court of criminal jurisdiction, the imposition of a fine by the court, and imprisonment in a penitentiary in default of payment. They are not in conflict. The statutes frequently make an offense a misdemeanor, and also attach a penalty to be obtained in an action at law. In the former excise law the seller of whisky without a license was liable to indictment, and also a civil action for a penalty at the instance of the overseer of the poor of the town.

If the ordinance did not, in terms, make a keeper of a disorderly house liable to punishment as a criminal, he would be so liable by virtue of the definition of that crime in the Penal Code (section 322).

Concede, as is contended, that section 30 was enacted primarily pursuant to section 21 of the charter to authorize a criminal prosecution. That is the only prosecution the common council could authorize. The charter itself already vested the municipal court with jurisdiction over fines and penalties. The common council, in this section, did fix the fine for disorderly conduct, and that gave the civil court the power to entertain a suit for its enforcement. The last clause of section 30 repeals all provisions of the chapter "imposing or prescribing the penalty or punishment for any violation thereof inconsistent with the provisions of this section as amended." That, in effect, repeals every one of the provisions which fix a penalty, for they either name its sum absolutely, or else the range is not identical with that provided by section 30. It is either less or more. It would seem, therefore, that the common council intended by this amendment to prescribe the fine for every offense uniformly within the limits of $2 and $100. This construction finds support in the fact that by the original section 30 the penalty fixed applied "unless a different penalty is specifically prescribed." In the amended section this clause is significantly omitted. But an examination of the various sections of chapter 9 discloses that the technical wording ordinarily applicable to a criminal prosecution was not designed. At least in four of the sections it is provided that the person "upon conviction forfeit and pay a penalty," or, in substance, that language is used (sections 25, 27, 31, and 32); in others the words "forfeit a penalty" (sections 7 and 24) and "under a penalty  *  *  * for each offense" (sections 18, 20, 22, and 23). Imprisonment in the penitentiary is provided for in section 21 of the charter, which may be said to relate to misdemeanors only, and also by section 25, which clearly applies to civil actions; and the incarceration in each case depends upon the omission of the defendant to pay the fine imposed, and the punishment of the defendant is limited precisely alike to the amount of the fine. It is entirely reasonable, therefore, to assume that the common council had both of these charter provisions in mind when it enacted section 30. The phraseology of the section may not be happy, but we must realize that it was adopted in the light of the charter provisions prescribing the means of enforcing remedies and administering punishment.

It is also to be observed that no specific warrant is found in section 30 to impose sentence, which seems to be contemplated by section 26 of the charter. That is, so careful was the common council to hew to the line of imposing a fine that even in the criminal proceedings, if such were designed by section 30, they were not severed from the fine or penalty, but were subsidiary to it for the purpose of its enforcement.

The provisions under review have been sustained by authority to the effect that the fact the keeping of a bawdy house is a misdemeanor (Pen. Code, § 322) did not deprive the common council of authority to enact ordinances declaring the keeper of such a house was guilty

of disorderly conduct, and a suit to recover the penalty established for its violation might be maintained. People v. Miller, 38 Hun, 82; Arhart v. Stark, 6 Misc. Rep. 579, 27 N. Y. Supp. 301; City of Buffalo v. Schliefer, 25 Hun, 275. Ordinances of this character are within the police control and regulation of the city, and prosecution for the offense is a civil action, and a summary trial is allowed. Ogden v. City of Madison, 111 Wis. 413, 87 N. W. 568, 55 L. R. A. 506; Wong v. Astoria, 13 Or. 538, 11 Pac. 295; Mankato v. Arnold, 36 Minn. 62, 30 N. W. 305.

It is somewhat uncertain from the record just the course pursued by the municipal court judge at the close of the evidence. A jury had been impaneled, and they were directed by the court to return a verdict of guilty, but the court later on stated that this was a proceeding to recover a fine, and not a criminal proceeding. The form of the verdict rendered, and whether the jury fixed the penalty, do not appear. I assume, however, that the court directed a verdict for a specific sum. By section 457 of the charter (Laws 1895, c. 805), "where a jury trial is had, the court is vested with the same powers before a verdict is rendered as are conferred by law upon the Supreme Court in the trial of an action before it." This would seem to vest the trial judge with authority to direct a verdict in a case where the direction is permissible in the Supreme Court. Section 20 of the charter gives the court the authority to determine the amount of the penalty where it is between two sums.

I think the judgment should be affirmed, with costs.