(Supreme Court, Special Term, Erie County.   March 16, 1908.)

1. PROHIBITION—NECESSARY PROOF—UNVERIFIED PETITION—"PROOF."

An unverified petition is not proof within Code Civ. Proc. § 2091, providing that a writ of prohibition may be granted "on an affidavit or other written proof, showing a proper case therefor."

[Ed. Note.—For other definitions, see Words and Phrases, vol. 6, pp. 5684–5686.]

2. SAME—FORM OF TITLE.

Under Code Civ. Proc. § 1994, providing that a writ of prohibition must be issued in behalf of the state; but where it is awarded on the application of a private person, it must show it was issued on his relation; and the officer or other person against whom it is issued shall be styled "the defendant"—the proceeding on application of F., a private person, against W. and G., officers, should be entitled, "The People of the State of New York, on the relation of F., against W. and G., as such officers."

3. CONSTITUTIONAL LAW—DUE PROCESS—DEPRIVING ONE OF LIBERTY OR PROPERTY.

Agricultural Law, § 32 (Laws 1893, p. 665, c. 338), empowering the Commissioner of Agriculture to issue subpœnas to persons believed by him to have knowledge of a violation of such law to appear before him or his assistant for the purpose of investigating alleged violation of such law, and declaring guilty of a misdemeanor one who refuses to obey such subpœna or to testify under oath before the commissioner or his assistant, does not deprive one of liberty or property within the constitutional provision as to due process, but simply authorizes the commissioner to acquire knowledge which may aid him in the discharge of his official duties.

4. SAME—JUDICIAL POWER—SUMMONING AND EXAMINING PERSONS.

The power given the Commissioner of Agriculture, by Agricultural Law, § 32 (Laws 1893, p. 665, c. 338), to issue subpœnas and conduct examinations under oath, is not a distinctive judicial power, so as to require restraint of its use by him, an administrative officer.

5. PROHIBITION—SUFFICIENCY OF SHOWING FOR WRIT.

Even were the contention sound that a proceeding by the Commissioner of Agriculture under Agricultural Law, § 32 (Laws 1893, p. 665, c. 338), to summon and examine persons under oath, would be unlawful were its object the obtaining of information on which to base some judicial action, prohibition would not issue, it not appearing for what the testimony is to be used; so that the proceeding may be treated as one to obtain information in aid of legislation, which is proper; and for which purpose, presumably, the commissioner is required by section 5 (page 657) to make an annual report to the Legislature.

In the matter of the examination of Henry Fenton and others, by virtue of a writ of subpœna issued by C. A. Wieting, Commissioner of Agriculture, pursuant to Agricultural Law, § 32 (Laws 1893, p. 665, c. 338), and its amendments. This is an application on the return to an order to show cause why an absolute writ of prohibition should not issue restraining said Wieting and his deputy, John H. Grant, from further proceeding with the examination of said Fenton. Alternative writ vacated, and peremptory writ denied.

Moses Day, for Harry Fenton and Dodds Bros.
Charles B. Moulthrop, for Attorney General.

WHEELER, J.  On February 21, 1908, C. A. Wieting, the State Commissioner of Agriculture, issued his subpœna pursuant to section

109 N.Y.S.—21

32 of the state agricultural law (Laws 1893, p. 665, c. 338), requiring the said Harry Fenton to appear and be examined before John H. Grant, an assistant commissioner, in relation to an alleged violation of the agricultural law by Dodds Bros. Company, Incorporated.

The relator asks for an absolute writ of prohibition on the ground of the alleged unconstitutionality of the statute under which the commissioner assumes to act. Before, however, considering the constitutional question raised, the court must first take judicial notice that the relator's papers are defective and are insufficient to warrant the granting of any writ. The alternative writ and order to show cause appear to have been granted upon the petition of the attorney for Fenton and Dodds Bros. This petition is acknowledged, but not verified. Section 2091 of the Code of Civil Procedure provides a writ of prohibition may be granted "upon an affidavit or other written proof, showing a proper case therefor." An unverified petition does not meet the requirements of the section. It is not "proof" within the meaning of the law. This proceeding should have been entitled "The People of the State of New York, on the relation of Harry Fenton, etc., against C. A. Wieting and John H. Grant, as Commissioner and Assistant Commissioner of Agriculture," as provided by section 1994 of the Code of Civil Procedure. This was not done. Disregarding, however, these irregularities, we are of the opinion that the section of the agricultural law giving the commissioner power to issue subpœnas and examine witnesses is not unconstitutional.

The relator contends the law authorizing the proceeding instituted "is unconstitutional for the reason the Legislature has no power to confer upon a person who has no judicial powers vested in him by the Constitution or Legislature of the state the authority to issue a process by which a person may be deprived of his liberty or his property." The statement is correct as an abstract proposition of law; but the answer to the contention is that the statute in question does neither of these things. That portion of the act authorizing the institution of the proceeding for the examination of witnesses reads as follows:

"The Commissioner of Agriculture shall have the power to issue subpœnas to be attested by him in his official capacity to any person or persons whom he may have reason to believe has knowledge of any alleged violation of the agricultural law, to appear before him or any of his assistant Commissioners of Agriculture for the purpose of investigating alleged violation of the agricultural law. Any person or persons who shall omit, neglect or refuse to obey subpœnas attested in the name of the Commissioner of Agriculture or who shall refuse to testify under oath before the Commissioner of Agriculture or his Assistant Commissioners of Agriculture, is guilty of a misdemeanor. The Commissioner of Agriculture and his Assistant Commissioners of Agriculture are hereby authorized and empowered to administer oaths and affirmations in the usual appropriate forms to any person or persons in any matter or proceedings authorized as aforesaid and in all matters pertaining or relating to the agricultural law and to take and administer oaths and affirmations, in the usual appropriate forms, in taking any affidavit or deposition which may be necessary or required by law or by an order, rule or regulation of the Commissioner of Agriculture or in connection with the official purposes, affairs, powers, duties or proceedings of said Commissioner of Agriculture or his Assistant Commissioner of Agriculture or any official purpose lawfully authorized by said Commissioner of Agriculture. The Commissioner of Agriculture or his Assistant Commissioners of Agriculture shall have the power

in proper cases to issue subpœnas duces tecum. Such subpœna or subpœnas duces tecum may be served by any person over the age of twenty-one years. Any person who shall make any false statement under oath before the Commissioner of Agriculture or his Assistant Commissioners of Agriculture, is guilty of perjury."

The act deprives no one of his liberty or of his property. It simply authorizes the Commissioner of Agriculture to acquire information. The knowledge acquired may aid him in the discharge of his official duties. But no one is deprived thereby of either liberty or property by reason of such testimony. The commissioner is given no power to determine or pass judgment upon the guilt or innocence of any one under investigation. That can be done only by the courts. If the Commissioner of Agriculture were convinced from evidence educed by such an examination that some one had violated the law, nevertheless the commissioner still has no power to commit the offender. If criminal or civil prosecutions were instituted, those proceedings would have to be instituted de novo. The commissioner in a prosecution would still have to proceed before proper magistrates and introduce his evidence of guilt anew. The court would then determine under due forms of law the guilt or innocence of the person charged.

The statement of the case shows that the proceeding for the examination of witnesses under the provisions of the act challenged does not in any way deprive any person of liberty or property or violate the provisions of the United States Constitution forbidding the deprivation of liberty or property without due process of law. The cases cited and relied on by the relator's counsel are not analogous. Among the cases relied on by him is the case of MacDonald v. Lubischer, 34 App. Div. 577, 54 N. Y. Supp. 869. In that case the Appellate Division of the court properly held that a commissioner appointed by the court of a foreign state to take the deposition of a resident witness has no power to commit a recalcitrant witness to jail in the state of New York. It will be seen from the very statement of the case that in that case the commissioner undertook to exercise judicial powers to determine the question of the contempt of the witness and to commit him for that contempt. Those powers can only be exercised by courts. If by the agricultural law the Commissioner of Agriculture had been given the additional power to judicially determine the guilt or innocence of the person under investigation, and power to commit to prison or jail, then we would have had a case analogous to that presented in People v. Lubischer.

It is further argued that the giving of the Commissioner of Agriculture the power to issue subpœnas and conduct examinations under oath are judicial in character, whereas his duties are purely administrative, and that therefore this court by its mandate should restrain the exercise of such a power. It is true that in the administration of justice the courts by their process compel the attendance of witnesses and the giving of evidence. While these things are essential powers, they are after all only incidental, given to aid the courts in ascertaining the truth and of passing judgment on matters at issue before them for their determination. The power to compel the attendance of witnesses and the giving of testimony is not, however, a distinctively

judicial power. That power has from time immemorial been exercised by other departments of government. It is repeatedly exercised by Legislatures and committees of such bodies charged with the investigation of various matters. The right of investigation has been given to various executive departments and officials to aid them in the discharge of their official duties. It has been given various independent commissions charged with the duty of investigating stated matters. It is conferred by the banking laws of the state upon examiners for the purpose of ascertaining whether banking business is conducted according to law. 2 Rev. St. (7th Ed.) p. 1411. It has been given the State Civil Service Commission for the purpose of inquiring into the enforcement of the civil service laws. It is exercised by the Public Service Commission in the furtherance of the discharge of its duties. (See section 19 of the act providing for that commission.) The power has been often and is usually delegated to mayors of cities and other municipal officers to aid them in inquiries into the conduct of municipal affairs. It cannot, therefore, be said that the power to compel the attendance of witnesses and the giving of testimony is a distinctively judicial power, but rather is one frequently exercised by other officials and departments of government in proper cases. It is argued, however, that the object sought to be obtained in this particular proceeding is the obtaining of information on which to base some judicial action, and that such a purpose is not legitimate or proper and should be restrained by the order of this court. There is nothing in the moving papers or in the record showing for what purpose the testimony of the witness Fenton is to be used. But assuming his testimony is to be used for the purposes claimed, we are aware of no decision holding that such a purpose would render the proceeding unlawful or unconstitutional. There is nothing, so far as we can discover, in the state or United States Constitution expressly prohibiting its exercise. In the very recent decision rendered by the Court of Appeals in the Matter of the Trustees of the Village of Saratoga v. Saratoga Gas, Electric Light & Power Co., Chief Justice Cullen in his opinion said:

"Legislative power is plenary except as limited by the federal and state Constitutions, and there never has been in this state that sharp line of demarkation between functions of the three branches of government which obtains in some other jurisdictions." Citing Bank of Chenango v. Brown, 26 N. Y. 467; People ex rel. McLean v. Flagg, 46 N. Y. 401; Lawton v. Steele, 119 N. Y. 226, 23 N. E. 878, 7 L. R. A. 134, 16 Am. St. Rep. 813.

We can see no good argument against giving executive and administrative officers power to obtain under oath and by means of compulsory process information touching the enforcement and operation of state laws for the purpose of the better enforcement of law. There can be no better deterrent of the infraction of laws designed for the protection and welfare of the public than publicity. To restrict publicity is against the interest of order and good government.

But even were the relator's contention sound as a proposition of law, nevertheless in the particular case now under consideration the writ of prohibition prayed for should be denied, for the reason that the proceeding may be treated as an effort to obtain information in aid of legislation which has always been regarded as proper and legiti-

mate.  By the fifth section of the agricultural law the Superintendent of Agriculture is required to make an annual report to the Legislature of his proceedings.  This is presumably for the purpose of enabling the Legislature to enact such further legislation as the public good may require.  In the case of People ex rel. Bender v. Milliken, 110 App. Div. 579, 97 N. Y. Supp. 223, the civil service law of the state gave to the State Civil Service Commissioners the right to make investigations touching the enforcement and effect of the provisions of the civil service act and the rules and regulations prescribed thereunder. This commission was required to report to the Governor for transmission to the Legislature its acts, with recommendations, etc.  The law also forbade the solicitation of political contributions from employés of public departments, and the commission had undertaken the official investigation of charges against the Fiscal Supervisor of State Charities for an alleged violation of that provision.  He sought to restrain such action on the part of the Civil Service Commission.  The court declined to interfere.  The court said that the information furnished to the Governor might be made by him the basis of charges against a public official which are to be tried pursuant to the law in an application for his removal, and also an aid to the Legislature in future legislation.  The court further said, "If, also, this investigation be for a lawful purpose, it cannot matter that the acts investigated constitute a crime."  The Court of Appeals affirmed the ruling on appeal in the same case, 185 N. Y. 35, 77 N. E. 872, and also said, "It is no valid objection to such an investigation that it may disclose crime or wrongdoing on the part of the individuals, provided its object is the framing of proper laws or regulations."  The "regulations" referred to were civil service rules and regulations, not legislative enactments.  In the matter of Davies, 168 N. Y. 89–107, 61 N. E. 118, 123, 56 L. R. A. 855, the Court of Appeals said:

"The process of thus obtaining testimony has never been regarded as an unauthorized interference with personal liberty, but as due process of law. If the courts themselves, simply of their own motion, can establish such a system, cannot the Legislature create a procedure similar in nature, even if it is more drastic in effect?"

In the opinion of this court, therefore, the alternative writ heretofore granted should be vacated and set aside, and the application for a peremptory writ denied.  Let an order be entered accordingly.