In the Matter of the Application of GRANDVIEW DAIRY, INC., Petitioner, for a Certiorari Order against CHARLES H. BALDWIN and Others, Constituting the Milk Control Board of the Department of Agriculture and Markets of the State of New York, Respondents.

Third Department, January 19, 1934.

*Harry L. Marcus* [*Herbert L. Maltinsky* of counsel], for the petitioner.

*Henry S. Manley,* for the respondents.

HEFFERNAN, J. This is a certiorari proceeding to review a determination of the Milk Control Board dated August 24, 1933. The defendants are the members of such Board.

By chapter 158 of the Laws of 1933 the Legislature enacted article 25 of the Agriculture and Markets Law known as the Milk Control Law which became effective on April 10, 1933. This law created the Milk Control Board and vested it with extensive authority to supervise and regulate the entire milk industry, including the production, transportation, manufacture, storage, distribution, delivery and sale of milk and milk products.

Prior to the enactment of this statute prices paid producers for milk were whatever the producers and their dealer agreed upon. The Board did not establish any price to be paid producers until May 16, 1933. On that date there became effective an order which required all milk dealers buying milk from producers to pay them a fixed price for it, substantially higher than the price which previously had been paid by dealers to producers.

That part of the statute which gives the Board authority to make determinations is found in section 308, subdivision 3, the relevant provisions of which are: " The Board may decline to grant a license or may suspend or revoke a license already granted upon due notice and opportunity of hearing to the applicant or licensee, when satisfied of the existence of any of the following: * * * (b) That the milk dealer has failed to account and make payment without reasonable cause, for any milk purchased from a producer. * * *

(k) Where the licensee has violated any of the provisions of this article." Review by certiorari is provided for by subdivision 6 of the same section. The authority for the Board to fix minimum prices to be paid producers is found under section 312, subdivision (d).

Petitioner, a domestic corporation, is the owner and operator of a creamery at Webster Crossing, Livingston county, N. Y. It buys milk from many farmers in that locality and then ships the same to New York city for sale.

After the Milk Control Board was organized, petitioner, in accordance with the provisions of the statute, applied to it for a license to buy and sell milk. Accompanying the application was the license fee. A temporary permit was issued to petitioner which enabled it to conduct its business.

On July 27, 1933, petitioner received from defendants the following notice: " You will please take notice that on Thursday, August 3rd, 1933, at 3 P. M., D. S. T., at the offices of the Milk Control Board, 20th floor of the State Office Building, Albany, New York, you will be given a hearing with respect to your application for a milk dealer's license pursuant to Chapter 158 of the Laws of 1933."

In compliance with the contents of such notice and at the time fixed therein petitioner's president and also its accountant appeared at the office of the defendants. These officers were not represented by counsel. None of the defendants was present. The Board was represented by its assistant counsel and its chief auditor. It is conceded that petitioner was given no notice by the Board or its assistants of any charge or complaint against it. At no time was it advised that it had violated any of the provisions of the statute. No mention was made of any offense it was alleged to have committed. At this hearing petitioner's representatives were examined and cross-examined by the individuals who appeared for the Board. They propounded the questions and ruled upon the evidence. The auditor of the Board was also sworn as a witness. Petitioner was given no opportunity, however, to controvert his evidence. After this hearing and on August twenty-fourth the Board made an order which is the subject of review in which it decided and determined that petitioner was guilty of violating an official order of the Board and that it owed its producers $5,666.43, which it should pay within twenty days or suffer the revocation of its license.

The merits of this controversy need not be discussed, because we are satisfied that petitioner was denied a fair hearing and deprived of all opportunity to present its defense. A violation of the statute must be proved against a licensee before a license can be revoked.

Such proof must be presented at a hearing of which the licensee is given notice and the opportunity to be heard. This statute was not intended to vest the Board with arbitrary power to revoke a license at will and without an opportunity of a hearing. The right to notice is fundamental. A complaint charging a specific violation must be served upon the alleged offender. He must be given the opportunity to answer. He is entitled to a hearing before a tribunal that shall not even tolerate the thought of wrongdoing, to be confronted by complainant, to be represented by counsel and to produce witnesses in his behalf. We do not give credence to the suggestion that defendants were influenced by prejudice against petitioner. The learned counsel who argued their case at our bar has satisfied us that defendants acted in good faith. We are convinced they proceeded honestly but, in our opinion, mistakenly. It may be perhaps that those who conducted the investigation in their behalf unwittingly created the impression that the hearing was inquisitorial and not judicial. The impartiality of the judgment seat, however, must be above suspicion. To give judicial sanction to the hearing which defendants accorded petitioner would be to deprive it of its property without due process of law. (*Ives v. South Buffalo R. Co.*, 201 N. Y. 271.) In that case in defining what constitutes due process of law the court said: "Process of law in its broad sense means law in its regular course of administration through courts of justice, and that is but another way of saying that every man's right to life, liberty and property is to be disposed of in accordance with those ancient and fundamental principles which were in existence when our Constitutions were adopted. ' Due process of law implies the right of the person affected thereby to be present before the tribunal which pronounces judgment upon the question of life, liberty or property in its most comprehensive sense; to be heard by testimony or otherwise, and to have the right of controverting by proof every material fact which bears upon the question of right in the matter involved. If any question of fact or liability be conclusively presumed against him, this is not due process of law.' "

The Board was also without jurisdiction to determine that petitioner was guilty of violating any provision of law or to direct it to pay over any money. It is given no power to pass judgment upon the guilt of any one under investigation. That can only be done by the courts. In certain instances section 307 of article 25 authorizes it to institute actions to enforce compliance with the statutory provisions or with any rule made pursuant thereto. In all other cases it is simply authorized to make investigations in accordance with law as provided in article 3 of the Agriculture and Markets

Law, and when the facts are ascertained to make a report so that the necessary legal proceedings may be instituted in the proper forum. (*Matter of Fenton*, 58 Misc. 303; *Matter of New Jersey Fidelity & Plate Glass Ins. Co.* v. *Van Schaick*, 236 App. Div. 223; affd., 261 N. Y. 521.) The last cited case involved the power of the Superintendent of Insurance to impose a penalty for an alleged violation of the Insurance Law. In holding that he had no such authority the present presiding justice, in speaking for this court, said: " The Superintendent of Insurance has no inherent power but only such as is conferred by statute. It was his duty to give notice of petitioner's violation to the Attorney-General. (Public Officers Law, § 72, subd. 2.) Article 71 of the Civil Practice Act provides the procedure by which the civil action for the penalty shall be brought by the Attorney-General. Where a statute imposes a penalty, unless special modes are prescribed, it is to be collected by a civil action at law. (*City of Buffalo* v. *Schliefer*, 25 Hun, 275; *City of Buffalo* v. *Preston*, 81 App. Div. 480; *People ex rel. Kane* v. *Sloane*, 98 id. 450; *City of Buffalo* v. *Neubeck*, 209 id. 386, 388.) " The reasoning in that case applies with equal force in our case. The determination of the Board is, therefore, void and is annulled, with fifty dollars costs and disbursements to petitioner.

HILL, P. J., MCNAMEE and BLISS, JJ., concur; RHODES, J., concurs in the result.

Determination annulled, with fifty dollars costs and disbursements.