OPINION OF THE COURT
Lawrence E. Kahn, J.
On October 5, 1982, the New York Department of Environmental Conservation (DEC) issued a State Pollution Discharge Elimination System (SPDES) permit, which established guidelines for discharge by the Niagara Falls Wastewater Treatment Plant (NFWTP), into the Niagara River. The instant CPLR article 78 proceeding was commenced on or about December 3, 1982, and originally returnable on February 11, 1983. Upon stipulation between the parties, the matter was adjourned on numerous occasions, finally being submitted on May 11,1984 to this court for determination. The article 78 proceeding seeks a judgment annulling the SPDES permit, directing the respondent to hold a public hearing, or in the alternative, requiring the Commissioner to reopen the public comment *642 for the permit for an additional 30 days. Upon oral argument, this court granted a related motion for leave to intervene on behalf of the Province of Ontario, Canada, and the Minister of the Environment of said Province.
The Industrial Liaison Committee (ILC) is comprised of 25 industrial users of the treatment plant, reportedly employing over 11,000 workers, and paying annual sewer assessments in the sum of $3,360,000 and over $8,000,000 in real estate taxes. Thus, it has a significant and bona fide interest in the issues raised hereby. The petition pleads that the issuance of a SPDES permit is not contested, and is desired by all concerned. At issue is the procedure utilized in the issuance of this permit and the data which allegedly was utilized in determining the amounts of discharge allowable.
Authority for issuance of a SPDES permit is grounded both in Federal and State law. The Clean Water Act provides for the issuance of such permits (US Code, tit 33, § 1342). The section also contains a delegation of responsibility to DEC which has promulgated regulations with respect thereto (6 NYCRR parts 750-757). No industry or municipality may discharge any pollutant into surface water without obtaining a SPDES permit. The particular waste treatment plant which is the object of this litigation (NFWTP), apparently varies from the typical plant in that it is required to treat a substantial amount of industrial discharge due to the concentration of industry in the area. The present facility was built in the mid-70’s and purportedly became operational on or about June 17, 1978. Various problems have arisen with respect to its operation which have necessitated extensive repair and closure of the plant.
The original SPDES permit was issued and became effective on or about January 31, 1975. By its terms, it expired on January 31, 1980. Thereafter, steps were initiated to issue a new SPDES permit, eventually culminating in the issuance of the permit which is the subject of this litigation. A draft permit was initially submitted by the City of Niagara Falls Utilities Department for consideration by DEC. Thereafter, various discussions were had between the city and DEC resulting in the publication of *643 same and requests for public comment at the end of January, 1982. Detailed written comments were submitted by many parties, raising substantial questions concerning the effluent limitations for the various pollutants to be treated by the plant. Requests for a public hearing were made from groups on both sides of the issue, including the ILC, Du Pont, Niagara Environmental Action and the Province of Ontario. The comment period ended on March 1,1982, and thereafter, several private meetings were held by respondent with interested groups with the result that various redrafts were contemplated. A new notice establishing a further comment period was published with the period scheduled to end on August 30,1982. Subsequently, due to continued controversy, the period for comment was extended until September 30, 1982. ILC timely submitted substantial comments and among others, requested a hearing pursuant to 6 NYCRR 753.6. Thereafter, on October 5, 1982, DEC issued the permit without addressing the requests for a public hearing. Petitioner seeks to vacate issuance of the permit upon respondent’s failure to hold a public hearing.
6 NYCRR 753.6 (b) provides that “[t]he commissioner shall hold a hearing if he determines that there is a significant public interest in and reason for holding such a hearing. In making such determination, he shall consider such expressions of public interest as the filing of requests or petitions for such hearing. Instances of doubt should be resolved in favor of holding a hearing.”
The standards applicable to the case at bar have been often repeated and are. most succinctly set forth in Town of Hempstead v Flacke (82 AD2d 183,187-188) as follows: “In reviewing the actions of an administrative agency, this court may only annul a determination if it is not rational — if it is arbitrary and capricious or unsupported by substantial evidence (see Matter of Pell v Board of Educ., 34 NY2d 222, 231). We may not substitute our judgment for that of the commissioner (see Matter of New York Water Serv. Corp. v Water Power & Control Comm., 257 App Div 590, 594, mod on other grounds 283 NY 23). The commissioner’s determination is entitled to great weight, especially where, as here, it is in an area requiring specialized, *644 scientific knowledge (see Matter of La Valle v Berle, 68 AD2d 235, 240).” The complex nature of the factors involved in establishing effluent discharge limitations is certainly beyond the expertise of this court. That is precisely why it must defer to agency expertise in the promulgation and implementation of administrative policy. In doing so, however, it is the court, not the agency, which is charged with the duty to “referee” the process by which their expertise is employed.
Herein, the unalterable fact is that many participants on both sides of the issue of effluent limitation were clamoring for a public hearing prior to the issuance of the permit. All requested a hearing. That some are now satisfied with respondent’s discharge levels, cannot alter the inescapable reality that prior to its issuance, both sides demanded the creation of a public hearing and the opportunity to refute contested points through the creation of a detailed record.
That respondent may have met privately with those concerned in an attempt to reach a compromise does not alter the mandate for public hearing, if the twofold criteria set forth in the regulation are present. Its mandate to conduct a public hearing is clear if there is significant public interest and a reason therefor. That both criteria were present here is beyond cavil. The public interest is self-evident and the reason therefore paramount. ILC’s comments and those submitted by others seek not only documentation of the methodology employed by the commissioner but also to refute certain assumptions upon which the ultimate permit levels were based. Indeed, respondent’s refusal to hold a hearing almost certainly insured that an article 78 proceeding could be maintained by an aggrieved party. In effect, they were “damned if they did and damned if they didn’t” because participants such as the Province of Ontario and the environmental groups interested in seeking minimum discharge levels, could almost certainly be expected to raise the issue in a subsequent challenge to the permit if they were dissatisfied with the levels contained therein. This is not an issue of conservationists versus industry, but rather, of insuring that the continuing controversy will always have a forum in which to sharpen and refine the issues. In essence, it is a reflection of our adversarial system of jurisprudence whereby *645 the public is insured a forum for the debate of such critical issues involving the very quality of life in our only habitat. “Under these circumstances, it was arbitrary for the DEC to fail to comply with the mandate of the statute, and to issue a permit without allowing the public and all interested parties * * * an opportunity to present relevant testimony with respect to the application.” (Matter of City of Long Beach v Flacke, 77 AD2d 638, 639.)
The rationale employed by the Appellate Division of this department in reviewing a similar statute concerning environmental issues is of particular relevance. In interpreting the provisions of the State Environmental Quality Review Act (ECL 8-0101 et seq.), they held that “[Requiring strict compliance by agencies * * * is more than a hollow procedural nicety” (Matter of Schenectady Chems. v Flacke, 83 AD2d 460, 463). Such scrutiny is particularly applicable in the case at bar where similar environmental issues are extant which so profoundly impact on the lives of each of us.
Respondent’s argument that relief does not lie in the nature of mandamus, is rejected. While it is without doubt that mandamus will not lie to require performance of a discretionary act, the vacating of the permit for failure to hold a hearing does not require relief in the nature of mandamus. In essence, the court’s determination is in the nature of certiorari and a finding that the failure to hold a hearing was arbitrary and capricious, premised upon the facts set forth in the request for relief. Indeed, the unequivocal mandate of the regulation operates to create a presumption in favor of public fact finding whenever “there are instances of doubt”.
The petition shall be granted to the extent that the determination of the respondent made and filed on October 5, 1982, wherein a New York State Department of Environmental Conservation State Pollutant Discharge Elimination System permit was issued with respect to effluent limitations for discharges into the Niagara River from the City of Niagara Falls Wastewater Treatment Plant, shall be vacated as arbitrary and capricious upon the failure to hold a public hearing as mandated by 6 NYCRR 753.6. The initial effluent limitations previously set shall remain in *646 effect during the period of remand to DEC for a new determination with respect to the issuance of the aforesaid permit.