THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOHN S.
FERGUSON, Respondent, *v.* EDWARD REARDON, as Peace
Officer of the County of New York, Appellant.

Constitutional law — statute taxing transfers of stock — unconstitutionality of provisions authorizing comptroller to examine
private books for evidence of violations of the law.

The provisions of chapter 241 of the Laws of 1905 (now article 12 of the
Tax Law, Cons. Laws, ch. 60) purport to authorize a compulsory general examination of all the private books and papers of a person having
made, or suspected of having made, transfers of stock as enumerated
in the statute, for the purpose of ascertaining whether, if made, he had
kept a record thereof and paid taxes thereon as required by the statute.
The statute, in attempting to authorize the comptroller to secure evidence from relator's private books and papers of violations thereof
which might be made the basis of criminal proceedings against him
thereunder or of an action for penalties, violates the provisions of section
6 of article 1 of the State Constitution, which provides that no person
shall be compelled "in any criminal case to be a witness against himself."
The condemnation of so much of the statute providing for a tax on transfers of stock as attempts to authorize the comptroller to secure evidence
of violations of the statute from private books and papers of the party
under investigation does not affect the general scheme of the statute.
*People ex rel. Ferguson* v. *Reardon,* 124 App. Div. 818, affirmed.

(Argued December 6, 1909; decided January 11, 1910.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the first judicial department, entered April

1910.]     People ex rel. Ferguson *v.* Reardon.     **237**

N. Y. Rep.]                    Points of counsel.

6, 1908, which reversed an order of Special Term dismissing a writ of habeas corpus, and directed the discharge of the relator from custody.

The relator was a member of a firm of stockbrokers. Claiming to act under the provisions of article 15 of the General Tax Law (now article 12 of the Tax Law in the Consolidated Laws) in relation to the tax on transfers of stock, an agent of the state comptroller demanded of the relator the right to examine the books and papers of said firm for the purpose of ascertaining whether the relator's firm had complied with the provisions of said article, and when this demand was refused the relator was taken into custody in accordance with the provisions of said Tax Law as for a violation thereof. One of the grounds set forth in relator's petition for the writ of habeas corpus and upon which his discharge was demanded was that the statute under which the examination of the books and papers was demanded was unconstitutional because it sought to make relator a witness against himself in a criminal case.

*Edward R. O'Malley, Attorney-General,* and *William Travers Jerome, District Attorney (Robert C. Taylor* of counsel), for appellant. The state is entitled to information concerning a man's taxability. (*C., etc., Assn.* v. *State,* 156 Ind. 463.) Information in the form of books and papers cannot be withheld from legitimate search unless perhaps they are strictly private. (*Boyd* v. *U. S.,* 116 U. S. 627; *Adams* v. *State,* 192 U. S. 585; *Comm.* v. *Dana,* 43 Mass. 329; *Ex parte Clarke,* 126 Cal. 235.) The papers of the relator's firm were not private. (*People* v. *Coombs,* 36 App. Div. 284; 3 Wigmore on Ev. 3116, 3128.) These documents were properly receivable in evidence because none of the defendants was in a position to claim any exclusive right to their possession as strictly private papers. (*State* v. *Smith,* 74 Iowa, 580; *State* v. *Cummins,* 76 Iowa, 133; *People* v. *Henwood,* 123 Mich. 317; *State* v. *Donovan,* 10 N. D. 203; *Park* v. *Cotton Mill,* 75 S. C. 560; *State* v. *Armeno,* 72 Atl. Rep. 216.) No

compulsion was employed upon the relator Ferguson as a witness. (3 Wigmore on Ev. §§ 2263, 2264; *People* v. *Gardner*, 144 N. Y. 119; *People* v. *Coombs*, 36 App. Div, 294; *People* v. *Kemmler*, 119 N. Y. 580; *People* v. *Truck*, 170 N. Y. 203; *People* v. *Furlong*, 187 N. Y. 198; *People* v. *Van Wormer*, 175 N. Y. 188.)

*John G. Milburn* and *Grenville Clark* for respondent. The provision of section 321 of the Tax Law authorizing the examination of the books and papers of any person, firm, company, association or corporation violates the provision of section 6 of article 1 of the Constitution of the state that no person shall be compelled in any criminal case to be a witness against himself. (*People ex rel. Taylor* v. *Forbes*, 143 N. Y. 227; *Matter of Peck* v. *Cargill*, 167 N. Y. 391; *Councilman* v. *Hitchcock*, 142 U. S. 562; *Emery's Case*, 107 Mass. 181; *Boyd* v. *U. S.*, 116 U. S. 616; *Matter of Kanter*, 117 Fed. Rep. 356; *Boyle* v. *Smithman*, 146 Penn. St. 255; Whart. on Ev. §§ 533, 751; *Lamson* v. *Boyden*, 160 Ill. 613.)

HISCOCK, J. This appeal involves the disposition of certain questions arising under chapter 241 of the Laws of 1905, as amended, entitled "An Act to amend the tax law, by providing for a tax on transfers of stock," and which provisions have now been re-enacted as part of the Tax Law in the Consolidated Laws.

As the title of the original act indicated, this statute provided for the imposition of a tax on transfers of stock as evidenced or accomplished by various methods and contracts enumerated therein, and contained various provisions looking to the enforcement of said law, and prescribing both criminal punishment and civil penalties, so called, for violations thereof.

We have already had occasion to affirm the constitutionality of the act in its general scope and as a revenue-producing measure. (*People ex rel. Hatch* v. *Reardon*, 184 N. Y. 431.)

The questions now presented arise under certain special and subordinate provisions which became incorporated in section 321 of the Tax Law, and as thus presented they are:

(1) Did said provisions of said section purport to authorize a compulsory general examination of all the private books and papers of a person having made or suspected of having made transfers of stocks as enumerated in the statute, for the purpose of ascertaining whether, if made, he had kept a record thereof and paid taxes thereon as required by the statute?

(2) Did the comptroller through his representative on the occasion which became the basis for this proceeding demand such general examination of the private books and papers of relator's firm?

(3) If these questions be answered in the affirmative, did the statute, in attempting to authorize the comptroller to secure evidence from relator's private books and papers of violations, if any, of the statute, which might be made the basis of criminal proceedings against him thereunder or of an action for penalties, violate the provision of the Constitution which secures every individual against any attempt to compel him " in any criminal case to be a witness against himself?"

The answer to the first question seems to me to be so clear as not to require extended discussion beyond mere quotations from the statute itself.

Section 321 of chapter 241, L. 1905, as amended L. 1907, chapter 324 (ch. 60, Consolidated Laws, section 276), first provides : " Every person, firm, company, association or corporation making a sale, agreement to sell, delivery, or transfer, of shares or certificates of stock, or conducting or transacting a brokerage business shall keep or cause to be kept a just and true book of account wherein shall be plainly and legibly recorded," amongst other things the date of, the number of shares covered by and the name of the party to such sale, agreement to sell, etc., " and such book shall at all times be subject to the inspection of the comptroller, or any of his representatives," within certain hours and excepting certain days.

240    People ex rel. Ferguson v. Reardon.    [Jan.,

Opinion of the Court, per Hiscock, J.    [Vol. 197.

No attack upon the foregoing provision is involved in this proceeding, and in our opinion it is entirely valid and constitutional. If this provision was complied with, the state required no further assurances than would be contained in this book to enable it to determine that proper taxes had or had not been paid. But the legislature apprehended that some persons might surrender too readily to a doubt whether a given transaction came within the provisions of the statute, and that others might willfully attempt to evade its provisions, and that, therefore, this prescribed "book of account" might not be reliable. To guard against these contingencies it then added the provisions which are here attacked. It provided: "The state comptroller may, at any time after transfers of stock * * * inquire into and ascertain whether the tax imposed by the provisions of this article has been paid. For the purpose of ascertaining such fact the comptroller shall have the right and it shall be his duty to examine the books and papers of any person, firm, company, association or corporation, and memoranda of transfers shall remain accessible for such inspection for three months from their respective dates. * * * Every person, firm, company, association or corporation who shall refuse to permit the comptroller or any of his representatives to inspect such books or any memorandum or record relating to such sale, agreement to sell, delivery, or transfer, or transaction at any time as above provided, or who shall fail to keep such book of account, or who shall in any other respect violate any of the provisions of this section shall be deemed guilty of a misdemeanor."

Independent of banks and other persons it is manifest that in the ordinary course of affairs a person like relator's firm carrying on a brokerage business would keep many books and records showing bought and sold transactions in stocks. He would be compelled to keep accounts with his customers and with other brokers with whom he dealt; there would be either the originals or copies of statements, reports and correspondence relating to and evidencing such transactions and very likely other memoranda or copies thereof under chapter 458

of the Laws of 1908, " relative to bucket shops, and fixing penalties," all showing the sale or purchase of stocks. It is impossible to adopt any normal conception of private books and papers which would not include those of the general description enumerated, showing a broker's private, and oftentimes most confidential, transactions with his customers. and others. Yet there can be no doubt that the statute attempted to authorize the comptroller and his agents to enter the place of business of any individual and at will demand, open up and examine any and all such books and records. The book which the statute required to be kept for public inspection is clearly and repeatedly described throughout the statute as a certain and specific " book of account," and when the statute describes as subject to inspection " the books and papers " and " any memoranda or record relating to " the sales, agreements to sell, etc., described in the statute, it clearly passes beyond this prescribed and required book of account and deals with all books and all papers in the possession of the person proceeded against. No entry of any confidential transaction would be protected from the inquisitive examination of the public official. The purpose of this broad provision is of course apparent. The legislature intended to provide a means by general examination of ascertaining whether the book required by the statute had been truly kept and whether all of the taxes provided by the statute had been paid.

To my mind it is scarcely less clear that the comptroller through his representative on the occasion in question demanded a general examination of the private books and papers of relator's firm and not an examination of the book specified by the statute and that, therefore, the second question outlined above must be answered in the affirmative.

It appears that the comptroller had equipped his representative with a certificate stating that he was " a duly authorized representative of the Comptroller of the State of New York to inspect and examine the books, memoranda, records and papers of any person, firm  *  *  *  who has made sale, agreement to sell, delivery or transfer of shares or certificates of

16

242     People ex rel. Ferguson *v.* Reardon.     [Jan.,

Opinion of the Court, per Hiscock, J.     [Vol. 197.

stock, or who is conducting or transacting a brokerage business, to ascertain whether the tax imposed by law has been paid." When the comptroller's representative appeared at the office of the relator's firm he presented the above authorization and thus indicated the purpose for which he had come, and thereby very clearly defined the meaning and scope of his subsequent demand. According to his own affidavit presented in response to relator's petition he " requested and demanded that he be allowed to inspect the books of said firm of Benjamin, Ferguson and McMurty which contained *any* entries, record or memoranda of any sale, agreement to sell or transfer of stock made within three months," and this demand was the one which was refused. By no reasonable interpretation, as it seems to me, can this demand be construed as applicable simply to the " book of account," required by the statute to be kept for inspection. The language employed in the demand is for all intents and purposes as broad as that employed in the statute itself. If the question was as to the effect of a *subpœna duces tecum* containing the language of the demand no one would doubt that it was broad enough to require the production of every book which contained any information relating to any sale or transfer of stock within the period named. If the agent desired to inspect the particular book described by the statute he should and would have used entirely different language in his demand and never would have employed that which has been quoted.

We thus reach the third and important question whether the statute under the process and penalties prescribed could compel a person to submit to an investigation of books and papers kept in his private business for the purpose of furnishing evidence which might be used against him as a basis for criminal prosecution or suits to recover penalties.

It will be observed that I am not considering the question which has been discussed in the briefs of counsel whether this statute offends against the Bill of Rights as incorporated in our statutes securing people " in their persons, houses, papers and effects against unreasonable searches and seizures." It

seems quite sufficient for the purposes of this appeal to test the provisions in question by section 6 of article 1 of our Constitution against compelling an individual in a criminal case to be a witness against himself, and which is the same provision found in the Constitution of the United States.

How can there be any doubt that this statute, if enforced, would violate the latter provision? The state comptroller is authorized to " inquire into and ascertain whether the tax * * * has been paid," and for this purpose it made it his right and duty to examine the books and papers. If, from such examination, he ascertains that the tax has not been paid he " shall " bring an action for the recovery of the tax and " for any penalty incurred," etc. Any violation of the statute is made a misdemeanor, and in addition the violator will " forfeit * * * a civil penalty " of five hundred dollars in an action which the comptroller " shall " bring. Thus we have an investigation to be conducted by a state official, the purpose of which is the detection of violations of a statute, the procedure of which is to compel a party to produce his private books as evidence against himself, and the sequel of which is penalties and criminal prosecution. If the statute had in terms enacted that the comptroller might summon and examine, under oath, the relator for the purpose of securing evidence of violations by him and his firm of the statute in order that such evidence might be used as a basis for criminal proceedings or an action to recover the prescribed penalties either then pending or thereafter to be instituted, I suppose that no one would seriously contend that it did not violate the Constitution.

Practically this question under the milder aspect of a civil action to recover penalties has been passed on under a constitutional provision worded as ours. (*Robson* v. *Doyle*, 191 Ill. 566.)

Is the statute any the less effective or obnoxious when it attempts to force the relator to produce before the comptroller private books and papers duly identified as his whose entries as well-established evidentiary admissions will be just as

probative of any violation as any sworn testimony for the purpose of sustaining against him a criminal prosecution or the action for a penalty which the comptroller is required to institute ? The investigation is authorized ; the violations are all defined ; the punishment and penalties are prescribed ; the duty of prosecution is laid. There is only lacking the evidence, and for any practical or substantial purpose what difference does it make whether this is secured by statements of a witness under oath or by entries from his books and papers, which are competent evidence against him without an oath ?

· It seems to me that this kind of an inquisition and the attempt to secure from an individual evidence which may be used to convict him of a crime or to forfeit his property comes well within the principles which have been applied to the interpretation of the Constitution. (*Robson* v. *Doyle*, 191 Ill. 566; *Emery's Case*, 107 Mass. 172; *People* v. *Combs*, 36 App. Div. 284, 293; *Boyd* v. *U. S.*, 116 U. S. 616; *Counselman* v. *Hitchcock*, 142 U. S. 547; *People ex rel. Taylor* v. *Forbes*, 143 N. Y. 219; *People ex rel. Lewisohn* v. *O'Brien*, 176 N. Y. 253.)

In *Emery's* case it was held that a constitutional provision that a citizen should not " be compelled to accuse or furnish evidence against himself," privileged him to refuse to testify before a legislative committee merely authorized " to inquire if the state police is guilty of bribery and corruption," on the ground that his evidence might tend to incriminate him. The court said (p. 181) : " By the narrowest construction this prohibition extends to all investigations of an inquisitorial nature, instituted for the purpose of discovering crime      *      *      * by putting suspected parties upon their examination in respect thereto, in any manner ; although not in the course of any pending prosecution." The doctrine of this case was approved in the *Counselman* case.

In the *Counselman* case, where the grand jury was engaged in an investigation of alleged violations by other parties, it was held that a witness could not be compelled to testify where his evidence might tend to convict him of a crime, it thus

being held that such an investigation by a grand jury was a "criminal case" within the meaning of the Constitution. It was said: "The matter under investigation by the grand jury * * * was a criminal matter, to inquire whether there had been a criminal violation of the Interstate Commerce Act. If Counselman had been guilty of the matters inquired of * * * he himself was liable to criminal prosecution under the act. The case before the grand jury was, therefore, a criminal case. * * * The object (of the constitutional provision) was to insure that a person should not be compelled, when acting as a witness in any investigation, to give testimony which might tend to show that he himself had committed a crime. The privilege is limited to criminal matters, but it is as broad as the mischief against which it seeks to guard." (p. 562.)

In the *Taylor* case it was written: "The right of a witness to claim the benefit of these provisions has frequently been the subject of adjudication in both the Federal and State courts. The principle established by these decisions is that no one shall be compelled in any judicial or other proceedings against himself, or upon the trial of issues between others, to disclose facts or circumstances that can be used against him as admissions tending to prove his guilt or connection with any criminal offence of which he may then or afterwards be charged." (p. 227.)

In the *Lewishon* case it was held that the Constitution applies to a criminal proceeding against another than the witness and protects him from testifying therein where the effect of his answers might be to furnish the evidence upon which criminal proceedings might thereafter be instituted against him. In the course of the opinion the interpretation adopted by the *Counselman* case is approved.

The foregoing cases involved attempts to compel a witness to give oral testimony, but the other cases above cited have made it plain that a person is protected from furnishing evidence against himself through the medium of his books and papers.

In *People* v. *Combs* the question was presented whether certain papers and records made or authorized by the defendant might be used against him. It was held that they were of a public and official nature and might be. But in the course of the discussion Judge CULLEN wrote : "A defendant in a criminal prosecution cannot be compelled to give such an inspection (of books and papers) ; not because his papers are any more free from seizure than those of other citizens, but because under the Bill of Rights (§ 13) he cannot be 'compelled in any criminal case to be a witness against himself.' \* \* \* Therefore, a defendant in a criminal prosecution could not be compelled by *subpœnas duces tecum* or other process to produce his papers for the purpose of incriminating him, nor could he be subjected to any examination to disclose their existence or place of deposit. But if the prosecution can obtain possession of the papers of a defendant without violation of the immunity guaranteed by the Bill of Rights, it is permitted to offer these papers in evidence against the defendant."

In the *Boyd* case it was held that a statute in effect requiring a person in a revenue case involving a forfeiture or penalty to produce his private books and papers for the purpose of furnishing evidence against himself was unconstitutional. This case has been criticised. The prevailing opinion was based on the fourth amendment to the Constitution against unreasonable search and seizure as well as the fifth amendment, identical with our own here under discussion. Whatever criticism has prevailed has been directed against the views expressed concerning the application of the former amendment. Neither the dissenting judges in that case nor those in any other court so far as I am aware then differed from or since have questioned the view therein affirmed with great vigor that " to require such an owner (of goods involved in the customs case) to produce his private books and papers, in order to prove his breach of the laws, and thus to establish the forfeiture of his property, is surely compelling him to furnish evidence against himself." (p. 637.)

There have not been overlooked the many cases industriously cited by the district attorney and which are believed by him to be opposed to the views above expressed. Most of these cases may be classified either as affirming the constitutionality of laws permitting an examination of citizens for the purely civil purpose of discovering and listing taxable property, or as holding that evidence of observations, including conversations, made by experts for the purpose of expressing an opinion as to the sanity of an accused and directions by the court in the course of a trial to an accused to exhibit himself for the purposes of identification will not be condemned as a violation of the Constitution, and that evidence derived from an examination of the person of a prisoner for weapons or marks or uncovered perhaps improperly in connection with the execution of legal process like a search warrant, will not be rejected because of the method by which it has been secured. It would undesirably lengthen this opinion to analyze the particular facts and principles of law upon which those decisions have been based and thus to point out just what they did decide. It may, however, confidently and broadly be asserted that they did not decide directly or indirectly that the legislature could compel a person to submit himself or his private books for examination in an investigation of which the primary purpose was to discover that he had been guilty of offenses for which by the aid of the evidence thus discovered he could be punished criminally or by penalties.

And so I reach the conclusion that each of the questions formulated at the beginning of this opinion must be answered in the affirmative and with the result of justifying the resistance which the relator offered to the attempt of the comptroller to invade the privacy of his books, papers and confidential business transactions with the hope of procuring against him some incriminating evidence.

While that question is not directly involved in this proceeding, it seems proper to state that the condemnation of the clause which has been considered and which of course

carries with it condemnation of the other clauses respectively providing for mandamus to enforce the right to examine such books and papers and making it a misdemeanor to refuse to allow an examination thereof, does not work any emasculation or destruction of the statute imposing taxes on stock transfers, and in the general scheme of which there is nothing to criticise. The sections other than the one including these clauses are so independent that obviously they are not affected by the elimination of the latter and most if not all of the other provisions in the same section with those condemned are so complete and so independent that they may be separated from those which are objectionable and preserved.

The order appealed from should be affirmed.

CULLEN, Ch. J., GRAY, WERNER and WILLARD BARTLETT, JJ., concur; HAIGHT and VANN, JJ., dissent.

Order affirmed.