ERNEST F DUNHAM, Plaintiff, *v.* ALBERT OTTINGER, Individually and as Attorney-General of the State of New York, Defendant.

Supreme Court, Albany County, July 23, 1926.

Corporations — fraudulent stock sales — injunction action to restrain Attorney-General from compelling plaintiff's attendance and production of books and papers at proceeding relating to plaintiff's sale of securities in violation of General Business Law, art. 23-A — General Business Law, § 352, authorizing Attorney-General to compel corporation selling stock and securities to file written statement under oath as to practices and to compel attendance of witnesses and produce books and papers by subpœna is constitutional — plaintiff's business is subject to control and regulation — Attorney-General properly requested plaintiff to furnish written statement under oath as to plaintiff's practices at hearing and to produce books and papers thereat — power given Attorney-General to issue subpœnas requiring attendance of witnesses and examination of books and papers does not violate State Constitution, art. 6, relating to courts — public officers, commissions and committees may subpœna and examine witnesses — Legislature purposely granted inquisitorial powers to Attorney-General — complaint dismissed.

Section 352 of article 23-A of the General Business Law authorizing the Attorney-General, when it shall appear to him that, in the purchase or sale within this State of commodities, or in the issuance, sale or promotion of any stocks, bonds or securities, any person or corporation shall have employed or is employing a scheme to defraud or obtain money by false pretenses or is about to engage in any practice which is fraudulent or in violation of law, to require such person or corporation to file with him a statement in writing under oath as to the facts and circumstances concerning the matter which he believes to be to the public interest to investigate and for that purpose may prescribe forms upon which statements shall be made, and further empowering him to subpœna witnesses, compel their attendance and order the production of books and papers which he deems material to the inquiry, was enacted for the purpose of combating the evil incident to fraudulent practices with respect to stocks, bonds and other securities and commodities, and is constitutional.

A proposed statement to be returned to the Attorney-General made in the form of a questionnaire, with spaces blank for furnishing information in detail as to the general history of the corporation to be inquired into, but seeking nothing more than might be properly required upon an application for a license to do business, is a proper element in the machinery set up for the enforcement of the statute.

Accordingly, the constitutional rights of the claimant, a domestic corporation, engaged in the business of purchasing and selling stock, bonds and other negotiable securities not only in the city of New York but throughout the United States and in foreign countries by means of correspondence and other methods, are not interfered with by the requirement of the aforesaid section that he furnish information in connection with his business and submit to an examination as to his practices, since his business is one which may be subject to regulation and control by the State.

The power given the Attorney-General to issue subpœnas requiring attendance and examination does not violate the provisions of article 6 of the State Constitution relating to courts, since the power to investigate, and incident to it the authority to issue subpœnas, is not peculiar to the courts of this State. It has long been the policy of the courts to sustain the power of public officers, commissions and committees to subpœna and examine witnesses in proceedings peculiarly in keeping with their particular problems.

While the authority granted to the Attorney-General under this statute is broad and somewhat unusual, an examination of the legislation discloses that the Legislature purposely granted inquisitorial powers to the Attorney-General with a view of discovering whether or not any person or corporation is engaged in fraudulent practices which are made illegal by the particular statute or other laws of the State.

Therefore, the complaint, to restrain the Attorney-General, his deputies and agents from compelling plaintiff's attendance upon a hearing in regard to his practices and commanding him to bring the books of account used in his business, including day-books, ledgers and other papers relating to the sale of securities pursuant to a subpœna and order issued by virtue of section 352 of the General Business Law must be dismissed upon the merits.

ACTION to restrain defendant, his deputies and agents, from compelling the attendance of the plaintiff and requiring plaintiff to produce books, papers and documents on a hearing or proceeding to be conducted by the defendant, pursuant to subpœna and order issued under the provisions of article 23-A of the General Business Law.

*Joseph W. Spencer,* for the plaintiff.

*Keyes Winter* and *Borden H. Mills,* for the Attorney-General.

ROSCH, J. This action is submitted upon the pleadings and an agreed statement of facts. The purpose of the action is to prevent an attempted investigation by the Attorney-General as to claimed fraudulent practices of the plaintiff in respect to stocks, bonds, other securities and commodities.

Acting under the provisions of article 23-A of the General Business Law (added by Laws of 1921, chap. 649), the Attorney-General caused to be issued a paper in the form of a subpœna, requiring the plaintiff to appear before him to testify in regard to the practices of the plaintiff, and commanding him to bring the books of account used in his business, including blotter, day books, ledgers, and other papers relating to the sale of securities in or from the State of New York. At the time of issuance and service of the subpœna there was issued and served also an order requiring the appearance of the plaintiff with his books and papers. The subpœna and order were returnable at the same time and place.

The plaintiff commenced this action before the return day named in the subpœna and order. By his complaint he alleges that he is

a citizen of the United States and the State of New York, and for a number of years has been engaged in the business of purchasing and selling stocks, bonds and other negotiable securities in New York city, which business is conducted under the name of Dunham & Co.; that the issuance of the papers in the form of subpoena and order, and the examination and proceedings intended to be taken by the defendant as therein entitled, are not connected with and are not related to any action or proceeding in any court; that such order and subpoena are issued and are intended to be used by the defendant for the lengthy examination of the plaintiff and an examination of his private books, ledgers and papers, thereby causing him damage and annoyance and irreparable injury to his business by interference therewith; that the issuance and service of such subpoena and order has caused great and irreparable injury to the good will of plaintiff's business; that the proceedings which the defendant intends and purposes to conduct under such papers or for the prosecution of penalties for non-compliance therewith will cause plaintiff additional injury; that the proceedings and determination which the defendant intends and threatens will preclude the plaintiff from the assertion and protection of his rights by the assistance of counsel and the supervision or review of such proceedings by a judicial officer, and that the defendant threatens to institute proceedings to punish plaintiff by arrest or a fine, if he fails to attend or submit to examination as required by the said papers issued and served in the form of order and subpoena; that the proceeding so attempted to be instituted by the Attorney-General is in violation of the Constitution of the State and the Fourteenth Amendment of the Federal Constitution.

The relief sought by the plaintiff is a judgment enjoining and restraining the defendant, his deputies and agents, from conducting a hearing, proceeding or examination contemplated in the papers issued and served in the form of order and subpoena, and from examining plaintiff or his books, papers or documents; also restraining the defendant, his deputies or agents from taking any proceeding to compel the attendance of plaintiff, or the production of his books, and restraining him from any proceedings to punish the plaintiff for not attending and producing books and papers.

The facts which, by stipulation, are to be found and determined, and upon which a decision is to be made, are substantially as follows: That the plaintiff is a citizen of the United States and the State of New York, and resides in the county and State of New York; that the defendant is the Attorney-General of the State, and as such Attorney-General is located in the city of Albany in the Third Judicial Department; that for more than ten years last past the

plaintiff has been engaged in the business of purchasing and selling stocks, bonds and other negotiable securities in the city of New York, and has conducted such business with various partners from time to time under the name of Dunham & Co., and that the business is now conducted under such name; that the purchase and sale of securities in connection with such business has been transacted not only by direct dealing within the city of New York but also by mail, correspondence and other methods with persons, firms and corporations throughout the United States and foreign countries; that the plaintiff's business conducted under the name of Dunham & Co. has acquired and now has a valuable good will with dealers in securities throughout the United States and in foreign countries; that from the circulation by plaintiff of various pamphlets it appeared to the defendant that the plaintiff might be engaged in fraudulent practices as defined in section 352 of the General Business Law, and on February 11, 1926, the defendant required of the plaintiff that he file with the defendant a statement in writing, under oath; that such form letter was in the nature of a questionnaire, and a copy of the same is submitted as part of the agreed and stipulated facts; that the plaintiff failed and refused to make any statement in writing under oath, and thereafter on the 16th day of March, 1926, the defendant caused to be delivered and served on plaintiff a paper purporting to be a subpœna, requiring the plaintiff to appear on the date and time therein specified before the Attorney-General, at his office in the borough of Manhattan, city of New York, which subpœna was accompanied by an order, and which subpœna and order directed the plaintiff to appear to testify regarding matters concerning the public interest, and to produce at such time and place certain books and papers therein named; that copies of the paper purporting to be a subpœna and the paper purporting to be an order are submitted. It is further stipulated and agreed that such papers in the form of subpœna and order were issued and served by defendant individually and in his official capacity, and that the defendant intends and threatens to carry out the proceedings contemplated in the subpœna and other proceedings for the enforcement thereof; that such papers were issued under the supposed authority conferred upon defendant by chapter 649 of the Laws of 1921, and laws amendatory thereof (being article 23-A of the General Business Law); and that the purpose and scope of the examination of plaintiff and his books is limited to a discovery of the practices of the plaintiff in the sale of securities in the State of New York; that the issuance of said papers in form of order and subpœna was not instituted or authorized by any grand jury, magistrate, judicial officer or court, but all

proceedings intended to be taken by defendant to compel obedience therewith will be pursuant to orders and judgments of the courts of the State of New York and their officers, as provided by article 23-A of the General Business Law; that such papers in form of order or subpœna and the examination and proceedings intended to be taken by the defendant are for the purpose of discovering whether a cause of action exists against the plaintiff, as provided by article 23-A of the General Business Law, and to enable the defendant to prepare his complaint in said cause of action, and also to prepare his cause of action for trial; that the defendant by such papers intends and threatens to compel the attendance of plaintiff upon a lengthy examination, and subject plaintiff's private books, records and papers to such examination, and thereby cause him inconvenience in connection with his business; that the defendant intends and threatens to institute proceedings to punish plaintiff by arrest or fine, if he fails to attend or submit to examination as required by said papers, and plaintiff will suffer annoyance and injury by the action of the Attorney-General, in that his private books of account will be subjected to the scrutiny of the Attorney-General and his deputies and auditors, and that they will be put in possession of information of the private and personal affairs of the plaintiff and of his confidential business relations with his customers; that the threatened arrest of the plaintiff and his prosecution will subject plaintiff to disgrace and contumely and expose him to humiliation, for all of which he will have no redress at law in damages; that the plaintiff has no adequate remedy at law. By the stipulation it is understood that the circulation of the various pamphlets which indicate to the defendant that the plaintiff might be engaged in fraudulent practices shall not be taken to mean that the defendant was and is, in fact, engaged in such fraudulent practices, and that the use of the words " papers in form of order and subpœna " shall not be deemed an admission by the defendant of the invalidity of such papers. It is agreed that without prejudice to the rights of either party, the time of return of the papers in the form of order and subpœna is extended to a fixed date subsequent to this determination and decision.

It is urged that the proposed examination of plaintiff and inquiry sought to be conducted contravenes the Constitution in that: *First,* it is a deprivation of the rights secured citizens by article I, section 1, of the State Constitution; *second,* it is an attempt to give the Attorney-General certain judicial powers in violation of article 6 of the State Constitution relating to courts; *third,* it is a deprivation of liberty without due process of law, within the meaning of section 5 of article I of the State Constitution and the Fourteenth Amend-

ment of the Federal Constitution; and, *fourth*, it is a violation of section 8 of the Civil Rights Law.

In considering these various contentions made in behalf of the plaintiff, it is well to view the purpose of the law. Article 23-A of the General Business Law was enacted for the purpose of dealing with "Fraudulent practices in respect of stocks, bonds, and other securities." The original law was passed in 1921. (Laws of 1921, chap. 649; amd. in 1923, chap. 600, and again in 1925; chap. 239.)

A practice has grown up in this State by which many people have been cheated and defrauded by the sale of worthless securities and stocks. Such condition has become nation-wide, and laws have been enacted to combat the evil. (*Hall* v. *Geiger-Jones Co.*, 242 U. S. 539; *Matter of Ottinger* v. *Civil Service Commission*, 240 N. Y. 435.) The law under consideration is known and referred to as the Martin Act. It is also known as a "Blue Sky Law." (8 C. J. 1130.)

That the purpose of the law is legal cannot be gainsaid. That it is aimed at an evil which exists cannot be questioned. It is necessary to determine whether the machinery established for the purpose of enforcement of the law is violative of the Constitutions. The general plan of the law is to provide for the prevention of fraudulent practices in the State in respect to stocks, bonds, securities and other commodities, through the activity of the Attorney-General and his deputies.

The law is made up of a number of sections. It provides that whenever it shall appear to the Attorney-General, either upon complaint or otherwise, that in the purchase or sale within this State of commodities, or in the issuance, sale or promotion of any stocks, bonds, etc., any person, corporation or association shall have employed or employs or is about to employ a scheme to defraud or to obtain money by false pretense, or when any person, corporation or the like makes or attempts to make a fictitious or pretended purchase of securities or commodities in this State, or shall have engaged or is about to engage in any practice which is fraudulent or in violation of the law, or which would operate as a fraud upon the purchaser, or where any dealer has sold or offered for sale, or is attempting to sell any security or securities in violation of the law as to fraudulent practices, or whenever the Attorney-General believes it to be in the public interest that an investigation should be made, he may, in his discretion, require such person, corporation or the like, to file with him a statement in writing under oath, or otherwise, as to the facts and circumstances concerning the matter which he believes to be to the public interest to investigate, and for that purpose may prescribe forms upon which statements shall

be made. The law further provides that the Attorney-General may also require such other data and information as he may deem relevant, and is empowered to subpœna witnesses, compel their attendance, and order the production of books and papers which he deems relevant or material to the inquiry. The law provides that if a person subpœnaed to attend such inquiry fails to obey subpœna without reasonable cause, or if the person attending shall without reasonable cause refuse to be sworn or examined or answer questions or produce books or papers when ordered so to do by the officer conducting such inquiry, or if a person, corporation or the like fails to perform any act required thereunder to be performed, he shall be guilty of a misdemeanor. The law further provides that any officer taking part in the inquiry, or any person examined as a witness, shall not disclose to any one, other than the Attorney-General, the name of any witness examined, or any other information obtained upon such inquiry, except as directed by the Attorney-General, and the violation of such required secrecy is declared to be a misdemeanor. (§ 352.) An investigation is permitted of the conduct of foreign corporations and the like, whose stocks, bonds or other securities are sold or offered for sale within the State, and service of notice provided for where there is no designation of a person upon whom process might be served, as required by the General Corporation Law (§ 352-a). Whenever the Attorney-General shall be satisfied from evidence that fraudulent acts condemned by the law are practiced, or about to be practiced, he is authorized to bring an action on behalf of the People of the State to enjoin such fraudulent acts. (§ 353.) Provision is made for the appointment of receiver, issuance of injunction and sequestration of property derived from fraudulent practices. (§ 353-a.) Whenever the Attorney-General has determined to commence an action under the law, he may present to a justice of the Supreme Court, before beginning such action, an application in writing for an order directing the person mentioned to appear before the justice or referee to answer questions and produce books and papers concerning alleged fraudulent practices which relate to the contemplated action. The justice of the court is required to grant order, and the application therefor may simply show upon information and belief that the testimony is material and necessary. The provisions of the Civil Practice Act in relation to examination of witnesses before commencement of action shall not apply, except as prescribed. The order shall be granted with preliminary injunction or stay as may appear to the justice proper, and upon a showing by the Attorney-General that defendant or an officer thereof has refused to appear,

44

produce books or papers relevant, or answer material questions as ordered, a preliminary injunction may forthwith issue without any further showing. (§ 354.) By another section of the law (§ 355) provision is made for signing and indorsing an order for examination and manner of service; and the powers of a referee appointed under the article are prescribed. (§ 356.) The Attorney-General is authorized to prosecute violations of the law applicable to or respecting fraudulent practices, and by this section of the law power is granted to supplant a district attorney, or direct the action of a district attorney. (§ 358.) Immunity is provided for a witness compelled to testify before the Attorney-General or his deputy, or any of the tribunals named therein. (§ 359.) The appointment of deputies without civil service examination is provided for (§ 359-a), and the unconstitutionality of any section or provision of the law shall not affect any other section or provision. (§ 359-b.) It provides for an official securities paper, in which are to be published the State notices pursuant to the provisions of section 359-e and which is referred to as " State Paper " (§ 359-c), and requires the publication of certain notices to be printed and published in the form as prescribed by law, which publication is to be made under a caption entitled " Dealers in Securities, etc." Copies of such publications are to be delivered to the Attorney-General. (§ 359-d.) Another section requires that any dealer shall, after the 31st of May, 1925, publish what is known as a State notice, setting forth his name and address, or if a corporation the State and country in which incorporated, or if a partnership, the names of the partners. The security or securities are also required to be stated and published in said notice, and provision is also made for the sale with proper listing and designation by selling group or syndicate (§ 359-e) and also for the exemption of certain securities from listing, as required by a portion of another section. The list of securities which are not required to be published is quite extensive and varied. (§ 359-f.) Any person, corporation or the like which has been served with an order issued pursuant to the provisions in relation to order of a justice of the Supreme Court, or with any order or with a final judgment in an action brought by the Attorney-General, as provided in the article, and who disobeys the same, shall be deemed in contempt of court and be guilty of a misdemeanor, in addition to being liable to a civil penalty. Any person, corporation or the like violating any of the provisions of the article is made guilty of a misdemeanor. (§ 359-g.)

A reading and studying of the act as a whole is proper in order to consider and determine its various purposes as well as validity. Different proceedings are contemplated by the law, and the whole

scheme thereof is to vest in the Attorney-General and his deputies not only authority to carry out its purposes, but the power to do it with as little limitation and restraint as possible. The particular section of the law which is to be viewed and considered for the purpose of the determination of this controversy is section 352. Defendant is attempting to operate under that particular section. The question before the court is one solely of law.

Whether or not the plaintiff would be deprived of the rights and privileges secured by the law of the land, or deprived of his liberty or property without due process of law, by the action of the defendant under the particular section must be determined by many elements which enter into consideration.

It cannot be successfully urged by the plaintiff that his business is not one which should be subject to regulation and control. (*People* v. *Atwater*, 229 N. Y. 303; *Banta* v. *City of Chicago*, 172 Ill. 204; 40 L. R. A. 611.) The business of a dealer in securities has been regulated by some form of law and practice for a number of years. The court must take notice of that condition. The sales made as a rule are not of property, but of the evidence of an interest in property, and such is not an ordinary class of business. (*Hall* v. *Geiger-Jones Co.*, 242 U. S. 539, 552; *Jermain* v. *Lake S. & M. S. R. Co.*, 91 N. Y. 483, 492.) It has been regarded of such character as to require administrative control. (*Merrick* v. *Halsey & Co.*, 242 U. S. 568, 585.) The dangerous and uncertain practices in relation to dealing, or claiming to deal, in various forms of commodities and securities have prompted the Legislature to pass stringent laws (Penal Law, §§ 390–395, 951–957.) The Legislature's view of the dangerous practices to be guarded against is clear. It has the power to act and discretion in acting. (*Roman* v. *Lobe*, 243 N. Y. 51, 54; *People* v. *Beakes Dairy Co.*, 222 id. 416, 427; *Klein* v. *Maravelas*, 219 id. 383.)

" The intangibility of securities, they being representatives or purporting to be representatives of something else, of property, it may be, in distant states and countries, schemes of plausible pretensions, requires a difference of provision and the integrity of the securities can only be assured by the probity of the dealers in them and the information which may be given of them. This assurance the state has deemed necessary for its welfare to require; and the requirement is not unreasonable or inappropriate. It extends to the general market something of the safeguards that are given to trading upon the exchanges and stock boards of the country, safeguards that experience has adopted as advantageous. Inconvenience may be caused and supervision and surveillance, but this must yield to the public welfare; and aga'nst counsel's alarm of

consequences, we set the judgment of the State." (242 U. S. 539, 552.)

The section of law under which the Attorney-General is attempting to act provides two steps in the proceedings: *First,* the sending out of a request for information. He is authorized to require the statement to be in writing and under oath, and to prescribe the form thereof. Such request for a verified statement was made of the plaintiff. *Second,* causing to be issued and served a paper in the form of subpœna, and a paper in the form of an order. Such subpœna and order were issued by the Attorney-General, acting under the provision of law authorizing and empowering him to subpœna witnesses, compel their attendance, examine them under oath, and to require the production of any books or papers which he deems relevant or material to the inquiry.

A copy of the proposed statement in form of questionnaire is annexed to the stipulated facts. It is in the form of a communication to be returned to the Attorney-General, made with spaces blank for furnishing information as to name of person, corporation or association, place of business, location of head offices, name under which business is conducted, length of time in business, in what States licensed or registered, States applied to for license or registration, statement as to filing of required notices, whether refused license or registration, whether license or registration has been revoked, whether individual or any one connected with business has ever been charged with violation of law against sale of securities, whether any one connected with business has ever been convicted of crime, whether been declared bankrupt, list and description of books, statement of broker accounts, list of brokers and addresses with whom account has been opened, statement of all loans with schedule of securities held as collateral, schedule of all securities, statement of all failed securities, list of securities carried in branch offices, hypothecation of securities and whether Tax Law provision has been complied with.

The information sought by the request made is rather in detail. However, it is nothing more than might be properly required upon application for a license, or required to be furnished in licensing or registering, where the business might be supervised and the public properly guarded against fraudulent practices.

The failure to comply with the request for information required by the Attorney-General is a misdemeanor. Such provision of law, however, would not and could not be held to extend to the failure to furnish information not pertinent or relevant and which would not fairly and reasonably be contemplated by the purposes of the law. That the request for information is beyond reason, not perti-

nent or relevant, cannot be held either as a fact or a matter of law. The details of carrying out statutory provisions must be delegated and every detail thereof cannot be set forth in full.

Here the plaintiff disregarded the request *in toto*, and it is not necessary to analyze the need of information sought or justify each separate request for information. If any information required to be furnished was not proper, it could be refused. A misdemeanor would not be committed by refusal to reply to request for information not proper or legal. To hold otherwise would be to hold that a misdemeanor would be committed by the failure to give information neither pertinent nor relevant. Such is not the purpose of the law, for it provides that the request must be " concerning the subject matter " which is to the public interest to investigate. It must be pertinent and relevant, and cannot be controlled by anything but the reasonable belief of the Attorney-General as to the public interest, and in the event of an attempted prosecution the question eventually would be determined by the court.

The paper in the form of a subpoena commands that the plaintiff, to whom it is directed, lay aside all business and excuses and appear before the Attorney-General at his office at a certain time therein stated, to testify to what he knows or may know in regard to certain matters concerning the public interest, and bring with him certain books and papers which the Attorney-General deems relevant and material to inquiry concerning the practices of plaintiff, and further states that for failure to attend, plaintiff shall be deemed guilty of a misdemeanor. The order is entitled: " In the matter of an Inquiry conducted by the Attorney-General, under and by virtue of Chapter 649 of the Laws of 1921, and acts amendatory thereof and supplemental thereto, concerning the practices of Ernest F. Dunham, doing business as Dunham & Company, in respect to stocks, bonds, securities, etc. as mentioned in said act." It is directed to Dunham & Co., and recites that it appearing to the Attorney-General, from data and information furnished to him, that certain books, papers and documents are material to the matter under inquiry, Dunham, the plaintiff, is ordered to bring and produce the same as specified before the Attorney-General at a time and place therein specified, which books and papers are enumerated, and which order further states that for failure to obey the same, plaintiff will be deemed guilty of a misdemeanor. The failure to attend in answer to a subpœna, or produce papers in keeping with the command of an order, or refusal to be sworn or answer questions, is a misdemeanor when done without " reasonable cause."

Both the response to the inquiry as required by what is referred

to in the statement of fact as questionnaire, and the refusal to appear as witness, be sworn, produce papers and answer questions are controlled by the conduct of the party to whom the questionnaire is submitted, or who is sought to be examined. Such conduct must consist of refusal to furnish response to questions pertinent or relevant, or to act, without reasonable cause. The law must be something more than an empty form. It would be nothing but a mere gesture, if there was no provision showing some force to it. The provision of section 352, if any person " fails to perform any act required hereunder   *   *   *   he shall be guilty of a misdemeanor," is subject to the following qualification: In relation to the inquiry " in form of questionnaire," the request must be " concerning the subject matter " which " is to the public interest to investigate." (*Interstate Commerce Comm.* v. *Brimson*, 154 U. S. 447, 479.) It must be pertinent and relevant, and cannot be controlled by anything but a determination of the Attorney-General as to the public interest. (*Harriman* v. *Interstate Commerce Comm.*, 211 U. S. 407.) As to the refusal to subject oneself to the direction of subpœna, produce books pursuant to order and submit to examination, the witness can require that such conduct be regulated with regard to his rights and be not unreasonable. If not so regulated, he can defend himself against the penal provisions of the statute. (*Matter of Barnes*, 204 N. Y. 108.)

The constitutional rights of the plaintiff are not interfered with by the requirement that he furnish information and submit to examination. If the law required a licensing or a registration, the information sought, the control, the examination and a penal provision would be essential to make a workable as well as enforcible statute. In the event of licensing, the arguments advanced against the validity of the statute would be that the license fee was prohibitive, the law was discriminating, and many other and varied reasons urged against that type of legislation. The plaintiff here, and others in like position, should not complain about the law because it does not provide for licensing. To say that the authorities which sustain laws requiring licensing are distinguishable upon that ground alone, does not seem logical. The plaintiff is relieved of that requirement. A business can be supervised and controlled under the police power without its licensing. (General Business Law, § 343.) Licensing a business may be nothing but a means by which it can be regulated. The provisions of this statute differ somewhat from other statutes enacted for the same purpose, but its general plan is somewhat the same. (*Caldwell* v. *Sioux Falls Stock Yards Co.*, 242 U. S. 559.)

It is urged that the attempt to give the Attorney-General general

power to issue subpœnas requiring attendance and examination violates the provisions of article VI of the State Constitution relating to courts. The power to investigate, and incident to it the authority to issue subpœnas, is not peculiar to the courts. This is evidenced by an examination of the statutes of the State. The power to issue subpœna and swear witnesses is granted the Civil Service Commission (Civil Service Law, § 6, subd. 4); Comptroller (General Business Law, § 72); Commissioner of Farms and Markets (Farms and Markets Law, § 27); Commissioner of Health (Public Health Law, § 4); Industrial Commissioner, members of Industrial Board, deputy commissioner and referees (Labor Law, §§ 39, 41); the common council of a second class city (Second Class Cities Law, § 40); Conservation Commission (Conservation Law, § 24); State Officers (Pub. Off. Law, § 61); by the Governor, or someone under his direction (Pub. Off. Law, § 34); presiding officer of board of managers, directors or trustees of asylum (State Charities Law, § 456); legislative committee (Legislative Law, § 60; Penal Law, § 1329); military court (Military Law, § 147; repealed by Laws of 1917, chap. 644); Public Service Commission (Pub. Serv. Comm. Law, §§ 19, 66, subd. 10; 80, subd. 9); State Board of Charities or one or more of its members (State Charities Law, § 13); members of State Tax Commission, deputies, secretary or other officers or employees duly designated (Tax Law, § 171-b); village board (Village Law, § 335), and others.

The power to issue subpœna and direct appearance of witnesses is extended by statute as follows: " When * * * an arbitrator * * * other person, or a board or committee has been heretofore or is hereinafter expressly authorized by law to hear, try or determine a matter, or to do any other act in an official capacity, in relation to which proof may be taken, or the attendance of a person as a witness may be required; or to require a person to attend, either before him or it, or before another judge, or officer, or a person designated in a commission issued by a court of another State or country, to give testimony, or to have his deposition taken, or to be examined; a subpœna may be issued by and under the hand of the * * * person, or the chairman, or a majority of the board or committee, requiring the person to attend; and also, in a proper case, to bring with him a book or a paper. The subpœna must be served in the same manner as prescribed for the service of a subpœna issued out of a court of record. This section does not apply to a matter arising, or an act to be done, in an action in a court of record." (Civ. Prac. Act, § 406, subd. 1.)

The restriction of legislation has recently been attempted in relation to investigations and determinations by legislative and

administrative agencies. Section 1 of the concurrent resolution of the Senate and Assembly proposing amendments generally to article 6 of the Constitution, as passed in 1922, contains the following language: "Article VI. Section 1. The judicial power of the state shall be vested in the courts which are in this article expressly continued and established and in such inferior local courts as now or hereafter may exist under and by virtue of the provisions of this article." The proposed amendment in that regard created considerable opposition to the other proposed changes, and by the concurrent resolutions subsequently passed by the Senate and the Assembly the above-quoted section was omitted, and section 1 of article 6 of the Constitution as adopted in 1925 is continued in substantially the same form as in the Constitution of 1894. The intention of the different houses of the Legislature, and the determination of the electorate, show a purpose to continue in the Legislature the power to vest in public officials, commissions and the like, authority to subpœna witnesses, conduct hearings, examinations and investigations.

The power of public officers, commissions and committees to subpœna and examine witnesses has been sustained by the courts of the State. (*Matter of Hertle [In re Ahearn]*, 120 App. Div. 717; affd., 190 N. Y. 531; *Matter of Hirshfield* v. *Cook*, 227 id. 297, 300; *People ex rel. Bender* v. *Milliken*, 110 App. Div. 579; affd., 185 N. Y. 35; *Matter of McAneny*, 215 App. Div. 797; *People* v. *Ellenbogen*, 114 id. 182; affd., 186 N. Y. 603; *Matter of Hirschfield* v. *Hanley*, 228 id. 346, 348; *Matter of Fenton*, 58 Misc. 303.)

The plaintiff refers to the stipulated facts wherein it is agreed that the investigation here is for the purpose of discovering "whether a cause of action exists" and to aid in preparing the case, and urges that the power to subpœna, under such circumstances, is a judicial power, and cannot be conferred on the Attorney-General. The plaintiff cites the following cases as sustaining his contention: *Matter of Union Bank, No. 2* (147 App. Div. 593; 204 N. Y. 313); *Ward Baking Co.* v. *Western Union Telegraph Co.* (205 App. Div. 723). *Matter of Union Bank* involved the question of whether or not the Superintendent of Banks, upon the facts disclosed in the case, was authorized to issue a subpœna requiring the attendance before him of a former president of the Union Bank, which institution had been taken possession of by the Superintendent of Banks, pursuant to the provisions of the Banking Law. That case does not hold that the subpœna power in the Superintendent of Banks was invalid. By inference it holds otherwise. It held that such power was coupled with the duty of the Superintendent to investigate for the purpose of deciding whether to take possession

of the institution, and that after he had taken possession of the institution for the purpose of conducting or liquidating it in the form of a receivership, he then did not have the power to conduct a *post mortem* investigation. In that case the attempted examination of the president of the bank was more than a year after the bank had ceased to transact business. Subsequent to the decision of the *Union Bank* case, the then section 19 of the Banking Law (Laws of 1910, chap. 452) was amended by providing that an examination might be had and inquiry instituted and continued in the discretion of the Superintendent of Banks after he had taken possession of the property and business of such a corporation. (See Banking Law, § 39.)

*Ward Baking Co.* v. *Western Union Telegraph Co.* was an action brought to restrain a telegraph company from delivering to the Attorney-General copies of certain telegrams which were either sent or received by the plaintiff. The Attorney-General, acting under subdivision 8 of section 62 of the Executive Law, and pursuant to the directions of the Governor, was inquiring into the circumstances surrounding the death of one Peters. The conclusion of the Appellate Division was that the investigation was not general in character but was directed and conducted for the sole purpose of obtaining proof that one Ward had killed Peters with malice aforethought. (P. 727.) The court concluded that the provisions of subdivision 8 of section 62 of the Executive Law, relied upon by the Attorney-General, were not designed to give sanction to an investigation of that character. The holding of the Appellate Division in the *Ward Baking Company* case was undoubtedly prompted by the peculiar facts and circumstances there presented, and the manner in which the investigation was being conducted or attempted to be conducted. The court in that particular case felt justified in holding as it did, and in expressing the opinion of the court the justice writing for that tribunal used language which might lead one to believe that the power to issue subpœna and conduct investigation is a judicial power, and that there can be no delegation of it to an executive official. It is difficult to see, however, how the court could have so held, in view of the many authorities of the courts of the State to the contrary.

The case of *People ex rel. Ferguson* v. *Reardon* (197 N. Y. 236) is also cited by the plaintiff. That case involved the right of the State Comptroller to examine books of brokers to ascertain if stamp taxes had been paid. The sole question before the Court of Appeals in that case was whether that part of the Stock Stamp Tax Law which authorized the Comptroller to make a general examination of the books and papers of a broker was constitutional. The

court held that part of the statute was unconstitutional because the general examination of the books and papers would, in effect, compel a broker to give testimony which might tend to incriminate him. An examination of the statute under consideration in the *Reardon* case does not disclose that there was any immunity clause therein. Such a provision is contained in the Martin Act (Gen. Bus. Law, § 359). The language of such section is clear and broad. If the statute which was reviewed and considered in the *Reardon* case had contained an immunity clause, there would then have been no incrimination or invasion of the constitutional rights of the relator.

It is essential that the court have forms of process to compel the attendance of witnesses and swear and examine parties and witnesses. It is one of the important functions of an original tribunal. The power to compel the attendance of witnesses and conduct an examination, however, is not peculiar to the courts. Such power has been exercised by various officials from time immemorial. The duty to investigate before commencing an action is one that would be incumbent upon an Attorney-General under any circumstances. Such would be so, independent of any statutory provision; and that he should be empowered by law to make requests for sworn information, and require witnesses to appear and examine them, in order to pass upon the conduct of the party to determine whether there is a fraudulent practice, at most merely extends and prescribes a form of his investigation. On analysis, it would seem that a more serious complaint could be made by one against whom an action had been instituted, and against whom fraudulent practices had been charged, where the action was prematurely or unfairly instituted and without investigation. If the manner of investigation is unfair or unreasonable or not legally conducted, the courts then are open to a person whose rights are unfairly dealt with. Under those circumstances, the courts would not fail to protect the individual. (*Ward Baking Co. Case, supra; Reardon Case, supra; Union Bank Case, supra.*) Such holdings, however, do not prevent the enactment and enforcement of laws to properly regulate and control a business which on account of its very nature, for the public welfare, requires regulation and control under the general police power.

The purpose of the investigation is to discover whether there is a violation. It is difficult to discover what other purpose would prompt an investigation. If through such an investigation it is discovered that an action should be brought, it is the duty of the Attorney-General to commence such action.

A number of States have passed laws of the class known as

Blue Sky Laws, in which the power of subpœna and examination is granted to certain officers or officials named therein. Attention is called to the following States and enactments: *Michigan*, Public Acts of 1923, No. 220, §§ 1, 18; *California*, Investment Companies Act, Laws of 1913, §§ 4 and 17; *Illinois*, Illinois Securities Law (Rev. Stat. of Illinois, chap. 32, ¶¶ 254–296), §§ 9, 17, 24; *Missouri*, Securities Act, Laws of 1923, §§ 10, 21; *Oklahoma*, Compiled Statutes, chap. 6, art. 42, § 2280; *Kentucky*, Blue Sky Law, Laws of 1920, chap. 125, § 8; *Florida*, Rev. Gen. Statutes, 1920, § 4068; *Arkansas*, Blue Sky Law, §§ 4, 8.

Such statutes, or laws of which the present statutes are re-enactments, have been held constitutional. (*Merrick* v. *Halsey & Co.*, 242 U. S. 568; *Redmond & Co.* v. *Michigan Securities Comm.*, 222 Mich. 1; 192 N. W. 688; *People* v. *Simonsen*, 64 Cal. App. 97; *People* v. *Lee*, 311 Ill. 552; *Schmidt* v. *Stortz*, 208 Mo. App. 439; *Hornaday* v. *State*, [Okla. Cr. App.] 208 Pac. 228; *King* v. *Commonwealth*, 197 Ky. 128; 246 S. W. 162; *Ex parte Taylor*, 68 Fla. 61; *Standard Home Co.* v. *Davis*, 217 Fed. 904; *Mechanics B. & L. Assn.* v. *Coffman*, 110 Ark. 269.)

The need of this form of enforcement of the law may be evidenced by the somewhat general enactment thereof. (*Roman* v. *Lobe*, 243 N. Y. 51, 55; *Klein* v. *Maravelas*, 219 id. 383, 385; *Biddles, Inc.*, v. *Enright*, 239 id. 354, 368.)

The authority granted to the Attorney-General under this statute is broad and somewhat unusual. The purpose of the Legislature to grant these unusual powers to the Attorney-General is clearly apparent. Inquiry and investigation, as before observed, of necessity would be coupled with the power of license, and under those circumstances the power of investigation would be essential or the need of licensing would not exist, except perhaps for license tax purposes. Whether the investigation should be made for the purpose of granting license (General Business Law, §§ 72, 73; Real Prop. Law, §§ 441, 441-c, as added by Laws of 1922, chap. 672),* or such power shall be exercised to regulate a business for the public good, seems little, if any, different.

Counsel for the plaintiff concedes that when a State has once brought within its control and has restricted a certain business or calling, those who choose to enter such business or calling thereby surrender some of their natural rights as citizens and become subject to a measure of supervision. It should be an answer to the contention that a licensing is required in the first instance, that there are certain types of business which may require power of regulation, and that when one chooses to enter such a business

---

*Section 441 was amended by Laws of 1924, chap. 579.— [REP.

or calling, they thereby surrender some of the rights which a citizen would have in an ordinary type or class of business, and thereby subject themselves to a measure of supervision on account of the very nature of the business in which they have entered. (*People* v. *Weller*, 237 N. Y. 316; *Musco* v. *United Surety Co.*, 196 id. 459.)

The manners of investigation are of a number of different forms. However, they are all aimed at the purpose of discovering whether or not there are fraudulent practices condemned by the particular statute or other laws of the State. To say that the proceeding should be limited to an examination before beginning an action as contemplated by section 354, and that the Attorney-General could not resort to the proceedings as contemplated by section 352, where the requested information is not furnished, would tend to limit the operation of the statute and subject the dealer, operator or business to contemplated action, where, by a willingness to disclose information and submit to examination, the institution of an action would be shown to be unnecessary. If possible the courts should not hold that those who conduct a business of the class under consideration, and who are willing to show that the same is being legally and properly conducted, should be subject to annoyance by the institution of a contemplated action because others in the same general line of business are not willing to disclose information showing whether their business is properly or fraudulently maintained and conducted. Some of the provisions of this law (the Martin Act) appear to be rather unusual, and at least one section has met with the condemnation of the court. (§ 359-a; *Matter of Ottinger* v. *Civil Service Commission, supra.*) Such section so condemned, however, is not essential to the purpose and plan of the act (*Weller* v. *New York*, 268 U. S. 319), and could hardly be construed as a provision without which the law would not have been passed.

The duty is incumbent upon the court to construe a statute in such a manner as to bring it within the provisions of the Constitution. This should be done if, by any reasonable interpretation and construction, it can be done. It is presumed that the Legislature has confined itself within the limits of its power, and a court should hesitate before declaring legislation unconstitutional. Where conditions exist which make a statute necessary for the public welfare, and where evil practices are concededly extant, to hold legislation unconstitutional under such circumstances would not be a wise exercise of power. Where the method of enforcement is assailed, it would be equally unwise, unless the court can clearly see a procedure established that should not be allowed to be conducted. " The test of the power of Congress is not the judgment

of the courts that particular means are not the best that could have been employed to effect the end contemplated by the legislative department. The judiciary can only inquire whether the means devised in the execution of a power granted are forbidden by the Constitution. It cannot go beyond that inquiry without entrenching upon the domain of another department of the government. That it may not do with safety to our institutions." (*Interstate Commerce Comm.* v. *Brimson, supra,* 473, 474.)

The purpose of the act is good. The means of enforcement are more extensive in some respects than other prior legislation in relation to investigation power. The court should hesitate to destroy or curtail the means of enforcement, when the eventual purpose is to attack evil practices.

The defendant is entitled to judgment dismissing the complaint on the merits, with costs. Submit decision.