Dye, J.
(dissenting). The decision about to be made turns on the question of the admissibility of defendant’s statement to the District Attorney, made shortly after his unqualified surrender, in the company of his counsel, to answer an indictment, filed January 28, 1952, charging him with the crime of murder in the first degree. A majority regard the admission of such a statement as an invasion of defendant’s constitutional rights, requiring a reversal of the judgment of conviction and the ordering of a new trial. This is because the defendant’s attorney was not present at the time. Such a ruling not only makes admissibility of the statement into evidence dependent on the presence of defendant’s attorney at a prearraignment interview, but also implies that a defendant who has retained an attorney somehow or other acquires a better constitutional status than one who has neglected to secure counsel.
This is a new concept in criminal prosecution. Heretofore a statement in the nature of a confession or an admission by a defendant in a criminal case was admissible against him “unless made under the influence of fear’-’ or duress, “or unless made upon a stipulation of a district attorney, that he shall not be prosecuted therefor” (Code Grim. Pro., § 395). The test of admissibility has been, until now, voluntariness. Here the challenged statement was freely and voluntarily made without any show of unwillingness or of circumstances indicating that it was in response to pressure, coercion or mistreatment. Neither does it appear that the defendant ever asked for *553 or was denied counsel nor, for that matter, does it appear that he at any time refused to answer any of the questions because his attorney was not present. This is not the “testimonial compulsion ” we spoke of in People ex rel. Kenny v. Adams (292 N. Y. 65), where books were surrendered pursuant to subpoena and threat of criminal prosecution, or in People ex rel. Ferguson v. Reardon (197 N. Y. 236), where authorities sought to examine relator’s books and papers for possible use against him in a criminal proceeding. We also fail to see how the holding of People v. Defore (242 N. Y. 13), relied on by the majority, supports its position; there, testimonial compulsion was absent and defendant’s conviction was affirmed.
In the course of the questioning, which appeared to have been carried on in a conversational tone and manner, the defendant gave answers stating his true name; that sometimes he was known as ‘ ‘ Sonny Pinto ’ ’; that he was married, had two children, and knew the deceased Errichiello, sometimes known as “ Mikey Evans ”; that he had a financial interest in the club in which Evans was slain; that the deceased had been best man at his wedding and the godfather of one of his children; that he had known Tisi, ‘1 Pretty Willie ’ ’ and Indelicato. When asked if he killed the deceased, “ Mikey Evans,” he stated that he had not. He further stated that on December 26, 1951 he had spent the evening at his mother-in-law’s home and from there had gone to his own home where he" remained until about 1:00 or 1:30 a.m. ; that he had then proceeded uptown to the Town Crest Bar and Drill where he had drinks with friends whose names he would disclose “at the proper time”; that he had stayed there until closing time and returned “ downtown ”, but by what means or by what route he could not remember; that he had made a stop to get something to eat and then gone to the club, which was closed; and that he had opened the door and seen ‘1 Mikey ’ ’. He said he remembered nothing in particular, because he was “so drunk”, except that he had called the police and, after they had talked with him at the club and at the station, had gone home. He said he had not been told to return. Afterwards, he did not attend the wake or funeral for “ personal ” reasons, hinting there might have been a “misunderstanding ” between himself and the deceased. He stayed around about two weeks and then heard that the police were looking *554 for >1101 relative to the homicide. He then left town and did not thereafter communicate with either his family or his friends, because he thought he could be traced. He was away seven years. He supported himself by doing odd jobs, but he declined to say where or for whom, or whether he had ever left New York State. The information thus elicitéd was generally favorable to the defendant. Here, nothing about the statement resembled a confession. Defendant never admitted his guilt. With those aspects claimed to be harmful the authorities were already familiar. Following this interview, Detective Talty took the defendant to the Fifth Detective Squad where he was booked, fingerprinted and photographed, all in the normal routine.
The circumstances under which the statement was given in no way resembled those in Spano v. New York (360 U. S. 315). There the defendant, having been surrendered by his attorney and cautioned to answer no questions, was nonetheless questioned from early evening until the late hours of the following morning during which time he requested that his attorney be called and was refused. He was, however, allowed to talk to his friend Bruno, who importuned him to confess. Contrary to his attorney’s admonition, he accepted Bruno’s advice and confessed. At the trial the voluntariness of that confession was left to the jury as a question of fact. In the Supreme Court it was contended that following indictment no confession obtained in the absence of counsel could be used without violating the Fourteenth Amendment. However, a majority of that court found it unnecessary to reach that contention, for they found the “ use of the confession obtained here [was] inconsistent with the Fourteenth Amendment under traditional principles” (p. 320). Three of the concurring Justices posed the question as ‘ ‘ whether after the indictment and before the trial the Government can interrogate the accused in secret when he asked for his lawyer and when his request was denied ” (p. 325), adding that “ This secret inquisition by the police when defendant asked for and was denied counsel was [a] serious invasion of his constitutional rights ” (p. 326). Two of those concurring Justices then joined with a third Justice to express the view that “ the absence of counsel, when the confession was elicited was alone enough to render it inadmissible ” (p. 326). *555 But here again the Justices took care to point out that the confession had been obtained after “ an all-night inquisition in a prosecutor’s office, a police station, and an automobile” and that his repeated requests ‘‘ to be allowed to send for his lawyer * * * were repeatedly denied ” (pp. 326-327).
Thus a majority in the Supreme Court refused to consider the contention that a defendant’s confession, made after indictment .but before arraignment, is inadmissible solely on the ground that it was given in the absence of his attorney. We expressly rejected that very contention when the case was before us (People v. Spano, 4 N Y 2d 256). On this record I find no basis for overturning that ruling. It follows that the statement was properly received in evidence.
Accordingly, I vote to affirm.
Judges Van Vooehis and Foster concur with Chief Judge Desmond; Judge Fuld concurs in a separate opinion in which Judge Van Vooehis concurs; Judge Dye dissents in an opinion in which Judges Fboessel and Bubke concur.
Judgment of conviction reversed and a new trial ordered.